## No. 18,250.

DOENGES-LONG MOTORS, INC. *v.* JAMES M. GILLEN.
(328 P. [2d] 1077)

Decided August 18, 1958.

Mr. HUNTER D. HARDEMAN, for plaintiff in error.

Mr. EUGENE O. BIRD, for defendant in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

THE parties appear here in reverse order of their appearance in the trial court. We refer to the defendant in error as Gillen or the minor, and to the plaintiff in error as the Motor Company.

On December 21, 1955, Gillen, a minor of the age of twenty years, ten months, twenty-four days, purchased and received delivery from the Motor Company a new '56 Ford automobile at the agreed price of $2852.98, which included sales tax. As a down payment thereon Gillen turned over to the Motor Company cash in the amount of $452.98 and a '49 Pontiac for which he was given credit of $500.00, leaving an unpaid balance of $1900.00. For this unpaid balance Gillen gave his note for

the amount of $2621.40, secured by chattel mortgage on the Ford, payable in thirty equal monthly installments.

Promptly after reaching his majority, Gillen advised the Motor Company that he disaffirmed the contract. He returned the Ford and demanded the return of his down payment of $452.98 and the Pontiac. His demand was refused and shortly thereafter this action was brought by Gillen to recover back the Pontiac and $452.98, together with interest.

Gillen in his complaint alleged that the cash and Pontiac were surrendered to the Motor Company as a down payment on the purchase price of the 1956 Ford, that he was a minor at the time of the transaction and has disaffirmed the contract.

The Motor Company answered and set up several separate defenses, the substance thereof being that: (1) Gillen fraudulently misrepresented his age and, because of said fact, he is estopped to disaffirm his contract; (2) because of his fraudulent misrepresentations he is not entitled to disaffirm, and (3) if it be held Gillen is entitled to disaffirm, the Motor Company is entitled to recover damages in the amount of $664.78: "said amount representing depreciation in value of said 1956 Ford automobile, repairs, commissions, and other expenses incurred by defendant when said automobile was returned."

As proof of its claim for damages, the Motor Company offered evidence of the following items:

RESALE OF FORD

1. Difference between sales price of Ford $2806.84 (not including sales tax) and price on resale $2695.00 .............................................$111.84
2. Repairs on Ford prior to resale ........................... 54.13
3. Salesman's commission on resale Ford ............ 90.00
4. Repairs on '51 Mercury taken in trade on resale of Ford ................................................. 21.48
5. Salesman's commission sale of '51 Mercury trade-in ................................................. 24.75

6. Repairs on '46 Mercury taken in trade on sale of '51 Mercury ............................................... 8.28
7. Salesman's commission sale of '46 Mercury .... 15.00
8. *Salesmanager's* commission on resale of Ford, and sale of '51 Mercury and '46 Mercury ........ 25.95
9. Cost of finance pay-off............................................... 15.00
10. Salesman's commission original sale of Ford .. 70.00

DISPOSITION OF PONTIAC

11. Difference between amount allowed for Pontiac ($500.00) and amount received from sale ($395.00) ................................ 105.00
12. Repairs on Pontiac ..................................................... 9.65
13. Salesman's commission on sale Pontiac ........... 19.75
14. *Salesmanager's* commission on sale Pontiac .... 3.95

OTHER EXPENSE

15. Use of Lot — trade-ins on lots 45 days at $2.00 per day ............................................... 90.00

$664.78

The trial court apparently concluded that Gillen had the right to disaffirm the contract and thereupon was entitled to the return of the $452.98 paid, and $500.00 trade-in allowance for the Pontiac, and this in spite of the fact that the Motor Company, according to the undisputed evidence, received net of only $361.65 from the sale of the Pontiac.

The trial court found that Gillen had misrepresented his age and, because thereof, the Motor Company was entitled to deduct from Gillen's demand the following:

Item 1 above .....................................................................$111.84
Item 2 above ..................................................................... 54.13
Item 3 above ..................................................................... 90.00
Item 4 above ..................................................................... 21.48
Item 6 above ..................................................................... 8.28
Item 9 above ..................................................................... 15.00

$300.73

plus *damages in the amount of $24.27* (there is nothing

whatsoever in the record to sanction this item), making in all a total deduction of $325.00.

The trial court also found that even though plaintiff misrepresented his age, the Motor Company is not entitled to deduct from Gillen's demand the following:

Items 5-7-8 above ............................................................$ 65.70

Item 10 ....................................................................... 70.00

Item 15 ....................................................................... 90.00

It made no mention of items 11, 12, 13 and 14, and entered judgment for plaintiff in the amount of $627.90. The net result was to allow Gillen $500.00 for his Pontiac; his cash payment of $452.98 — total $952.98 — and to deduct therefrom $325.00, leaving a balance of $627.98, for which amount judgment was entered.

The Motor Company is here by writ of error seeking reversal and dismissal of Gillen's complaint.

■ Some of the questions presented by the record here have not been passed upon by this court. Entrenched firmly in the law is the doctrine that an infant should be protected against contractual obligations incurred during his minority, it being a matter of public policy to protect minors from their possible improvident and imprudent contractual commitments.

■ We take the position that an infant lacks capacity (except for those contracts authorized by statute) to make a firm and binding contract; in all such contracts lies the inherent weakness and condition that the infant may disaffirm the contract during his minority or within a reasonable time after reaching his majority.

The record before us presents the question of the right to disaffirm and the rights and duties of the parties on disaffirmance.

■ Though the trial court did not expressly state that Gillen had the right to disaffirm his contract, the court proceeded on the theory that he did have such right. We expressly hold that a minor during his minority, and acting timely on reaching his majority, may disaffirm any contract that he may have entered into during

his minority, and this is equally true whether he has or has not misrepresented his age and even though his misrepresentation of age induced the other party to enter into the contract. We are speaking now of disaffirmance, which is clearly distinguishable from a proceeding in equity seeking rescission.

On disaffirmance the contract is abrogated ab initio. In 43 C.J.S. 176, §75, it is said:

"The general rule, which has been said to have its exceptions and limitations, is that the disaffirmance of a contract made by an infant nullifies it and renders it void ab initio, and that the rights of the parties are to be determined as though the contract had not been made, the parties being restored to the status quo as far as possible * * *."

The right of an infant to disaffirm a contract is an absolute right.

In *Mosko v. Forsythe,* 102 Colo. 115, 76 P. (2d) 1106, this court said:

"When defendant elected to disaffirm and void the contract, it became invalid ab initio, the parties thereto reverted to the same position as if the contract never had been made, and neither is bound by any part of the contract when once rescinded. The weight of authority clearly seems to be that when the defendant sought to void his contract, then having in his possession the specific property received by him through the transaction, he was required to return same to plaintiff as a prerequisite to such voidance. * * *. Upon demand or in a proper action for the return of the consideration, defendant is entitled to recover and the liability of plaintiff attaches. The right of the defendant infant to disaffirm and void his contract is an absolute and paramount right which carries with it the right to be placed in status quo relative thereto."

The right to disaffirm is not lost by reason of the fact that the infant has induced the making of the contract by deliberate misrepresentation of his age. In such

cases neither party is entitled to enforce the contract or to recover or retain any of the benefits or fruits thereof though each has rights and duties as hereinafter set forth.

The situation presented by the case before us, as disclosed by examination of the pleadings, judgment, and facts in evidence as outlined above, indicates that the trial court recognized the infant's right of disaffirmance, but at the same time granted to each party part or all of the fruits of the contract. Any award, under the facts here, in which the contract plays a part is inconsistent with disaffirmance and is erroneous. The trial judge in effect awarded the minor $500.00 for his Pontiac automobile which the Motor Company had sold and was unable to return. There is no evidence in the record of the reasonable value of the Pontiac. The Motor Company sold it for $395.00 after placing repairs thereon of $9.65 and paying salesman's commission of $23.70.

■ The first problem is to determine what are the rights of Gillen on disaffirmance. He is entitled to have his property returned to him if such is possible; if impossible, as in this case, he is entitled to have his money returned and, in lieu of the Pontiac, its reasonable value at the time of its delivery. The rule is well stated in *Robertson v. King,* 225 Ark. 276, 280 S.W. (2d) 402:

"The automobile dealers have disposed of the car they received in the trade, and cannot restore it to the minor. In a situation of this kind, the weight of authority is that the actual value of the property given as part of the purchase price by the minor is the correct measure of damages. Neither side is bound by the agreement reached as to the value of the car at the time the trade was made. This is true because the contract has been rescinded and there is no contract fixing the value. It is said in 43 C.J.S., Infants, §47, p. 117: 'While it is generally held that, where property traded in by the infant as part of the price is beyond reach of the seller, the infant is entitled to the reasonable value of the property at the time

of the purchase, rather than the value fixed in the purchase agreement, it has also been held that he is entitled to receive the value fixed in the agreement.'

"In support of the rule that a reasonable value of the property at the time of purchase governs, C.J.S. cites Collins v. Norfleet-Baggs, Inc., 197 N.C. 659, 150 S.E. 177, 178, where the court said: 'Where the infant parts with personal property, he may, upon disaffirmance, recover the value of such property, as of the date of the contract, but he is neither bound by, nor entitled to be awarded, the price fixed by the contract, for its real value may be more or less than the amount so stipulated.' * * *."

The trial court, though recognizing the right of disaffirmance, erroneously resorted to the contract price fixed by the parties in determining the amount Gillen should receive for his Pontiac. In order to restore Gillen to status quo as of the time of the contract, he should be awarded the money paid, plus the reasonable value of the Pontiac at the time of delivery thereof, together with interest on both sums from the date of delivery. The value of the Pontiac may well have been much less than $500.00, and to allow Gillen $500.00 would be to allow him the fruits of a contract which he has disaffirmed.

We are not unmindful of the fact that some courts have held that the infant should recover its "fixed trade in value," *Lockhart v. National Cash Register Co.*, 66 S.W. (2d) 796 (Tex. Civ. App.); others that the value is "presumably the sum * * * at which he [the adult] valued it when he obtained it from the plaintiff [the minor]." *Schoenung v. Gallett*, 206 Wis. 52, 238 N.W. 852. Neither rule has our sanction. Both of these rules give limited effect to the contract, though recognizing the right to disaffirm and thus render the contract nugatory ab initio.

We turn now to the rights of the Motor Company. The trial court found that Gillen's false and fraudulent representations induced the Motor Company to make the contract and part with its property. This

finding is amply supported by the evidence. For these false representations Gillen is answerable for all damages resulting directly and proximately from the deceit. The fruits of the contract are no part of such damages. In *Flora v. Hoeft,* 71 Colo. 273, 206 Pac. 381, we said:

"It is elementary that the damages recoverable are those which result directly and proximately from the deceit complained of. 12 R.C.L. 451, 452. The instruction complained of permitted the jury to include in plaintiff's damages the value of the contract as it would have been had it been carried out, that is, if the owners had conveyed the land to plaintiff. In other words, plaintiff was allowed to recover such sum as would have represented the profits he would have derived from the contract if the owners of the land had adopted it and fulfilled it. This instruction clearly violated the rule above stated, and was erroneous. * * *."

 In the case before us, Gillen wrongfully obtained possession of the Motor Company's Ford, wrongfully used it and depreciated its value, and eventually returned it, thus making restitution in part. The proper measure of damages is an amount equal to the difference between the reasonable (not contractual) value of the Ford on the date of its delivery and its reasonable value on the date of its return, together with interest at the legal rate on the reasonable value of the Ford for the period it was withheld.

 By following the above rules, we find that the minor has an absolute right to disaffirm and, on so doing, he gets back what he parted with, or the value thereof and interest; he is made whole. The Motor Company recovers an amount that compensates it for the damages which flow naturally from Gillen's tortious acts, for which he as a minor is answerable, just as an adult is answerable.

In resolving the claims of Gillen and the Motor Company, the trial judge erroneously took the contract price as the value of the Pontiac; he likewise took the contract

price as the value of the Ford and also allowed to the Motor Company an item of $15.00 finance charge which is clearly an outgrowth of the contract.

In *Myers v. Hurley Motor Company,* 273 U.S. 18, it is said:

" * * * When an infant of mature appearance, by false and fraudulent representations as to his age, has induced another person to sell and deliver property to him, it is against natural justice to permit the infant to recover money paid for the property without first compelling him to account for the injury which his deceit has inflicted upon the other person.

"Our conclusion that the affirmative defense is available in this action does not rest upon the doctrine of estoppel, though the result may be the same. It recognizes the plaintiff's right to repudiate his promise and sue for the return of his payments, and his immunity from a plea of estoppel in so doing. * * *."

Gillen, having falsely represented his age and as a result thereof obtained possession of the Ford automobile, is answerable for his tort and must respond to the Motor Company for its damage. Such damage being the difference in the reasonable value of the Ford at the time of its delivery and its reasonable value at the time of its return. There is nothing in the record to indicate the reasonable value of the Ford at either of these times. Likewise, the Motor Company is entitled to interest on an amount equal to the reasonable value of the Ford from the time of delivery until its return.

The judgment is reversed and the cause remanded for determination of the amount Gillen is entitled to and also the amount the Motor Company is entitled to, said amounts to be determined consistent with the views herein expressed.

Mr. Justice Knauss not participating.