**In the Matter of G. M. B., a Child Under the Age of 18 Years.**

**No. 1412.**

Supreme Court of Alaska.

April 8, 1971.

Joe P. Josephson, Anchorage, for petitioner.

John E. Havelock, Atty. Gen., Juneau, Harold W. Tobey, Dist. Atty., Robert L. Eastaugh, Asst. Dist. Atty., Anchorage, for respondent.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

## OPINION

ERWIN, Justice.

This case is before the Court on a Petition for Review of an order of the superior court incarcerating Petitioner for the period of time between his adjudication as a delinquent and his dispositive hearing. This order for temporary detention between November 13, 1970, and November 25, 1970, was stayed by this Justice on November 19, 1970, pursuant to Supreme Court Rule 33 until such time as the Supreme Court granted or denied a Petition for Review. We granted review under Supreme Court Rules 23 and 24 because this case presents important questions of law concerning the handling of juvenile cases by a master of the family court.[1]

---

1. *See* Etheredge v. Bradley, Op.No.670, 480 P.2d 414 (Alaska, February 8, 1971); Hanby v. State, 479 P.2d 486 (Alaska 1970).

Petitioner came before the family court pursuant to a petition which charged him as follows:

In that on or about September 18, 1970, at approximately 10:30 P. M., at or near Wasilla, in the Third Judicial District, State of Alaska, said minor did then and there, wilfully and unlawfully, while in the company of two others, injure a building in that he threw rocks through an undetermined amount of windows of Wasilla High School, all in violation of AS 11.20.570 (Injury to a Building) (REF AS 47.10.010[a], 1).

Petitioner admitted the allegations of the petition and the master conducting the hearing indicated he would recommend to the superior court that Petitioner be adjudged a delinquent minor.

At the time of the hearing the intake officer reviewed the background of Petitioner[2] and requested that he be returned to the custody of his parents pending the disposition hearing on December 22, 1970, because he was not a danger to himself or to the community.[3]

Instead, an order for temporary detention or placement was issued, signed by Wayne Anthony Ross as master for the judge of the superior court. It ordered the minor detained at McLaughlin Youth Center until November 25, 1970, at 9:00 a.m., for the following reason:

Child should be detained for his own protection in view of present offense and past violations.

Petitioner's final disposition hearing was held December 1, 1970, and Petitioner was ordered committed to the Department of Health and Welfare for an indeterminate period not to extend beyond his 19th birthday.

2. At 14 years of age Petitioner was placed on probation for one year because of his commission of two counts of burglary and one count of larceny from which he was subsequently discharged after serving the period suggested in June, 1968. Petitioner was incarcerated from July, 1968, to March, 1969, for petty larceny at McLaughlin Youth Center. He returned home and was again discharged for successfully completing probation in October, 1969. In January of 1970, Petitioner was charged with burglary not in a dwelling and was given a deferred institutional order which was suspended in May, 1970. Petitioner was placed on probation for the period of one year.

A psychological background report filed in 1966 indicates Petitioner had marginal intelligence and needed supervision of the type provided by probation supervision, a fact conceded by the intake officer at the hearing. Apparently, because of a mix-up in assigning probation officers, no probation officer was assigned during the period of probation commencing in May, 1970, and ending in the present complaint, even though the basis for deferring institutional placement was the previous successful completion of probation periods by Petitioner.

3. The specific recommendation of the intake officer was as follows:

Yes. We have one further recommendation to make to the court. This boy at the time of his investigation in this matter was allowed to remain in the custody of his parents. He was present in his office with his parents— present in my office with his parents and his attorney last week for an interview in this matter. The boy has— is on probation for committing a delinquent act in the nature of a burglary. He has been in McLaughlin Youth Center before and he's been on probation for approximately a year. Up to the present time his behavior has been satisfactory on probation. He was given a deferred institutional placement and at the end of his deferment it was determined he should be placed on probation. He has been cooperative with my efforts. His parents have been cooperative. The act of injury to a building is a malicious act but—I know this not a legal defense for it but the boy was under the influence of an intoxicating beverage and under the definitions for detention for a youngster, I—I would recommend that this boy remain in the custody of his parents. I don't feel there's any danger of him again getting involved in difficulties with the law, at least not until his disposition hearing. I don't feel that there's any danger that this boy will delay the jurisdiction—leave the jurisdiction before his disposition hearing and I do not feel he constitutes a danger to himself or others.

At the outset we are confronted with the State's assertion that the occurrence of this dispositive hearing renders moot the issue of the legality of the prior temporary detention order.[4] However, the November 19th stay order by its terms preserved any error in the temporary detention order for review by this court.

Although advisory opinions should be avoided, this case falls clearly within the public interest exception to the mootness doctrine. That exception permits appellate courts to reach the merits of cases normally considered moot where questions "capable of repetition yet evading review" are raised.[5] To invoke the exception, a two-pronged test must be met: The dispute must be a recurring one, and its nature must be such that the mootness doctrine, if applied, would effectively remove from review the governmental action protested.

■ Here, juvenile detention between adjudicative and dispositive hearings is a matter of broad public interest, and is likely to recur. Therefore, this court may exercise discretion to hear challenges to the legality of that detention even though the occurrence of the dispositive hearing would normally render the matter moot.[6]

In order to provide guidance to the superior court for the administration of juvenile justice, we now turn to the grounds which we believe sustain the release of the youth.

Petitioner challenges the legal authority of the master to sign any temporary detention order pending a disposition hearing absent the showing of special circumstances necessary for temporary detention as set forth in Children's Rule 2(a) (6):

> In all cases where the authority of the master has been specially limited under this rule or under the order of appointment, he may nevertheless order the child into temporary detention where the welfare of the child and that of the public so require. In all such cases it shall be the duty of the master to transfer the matter to the superior court in the most expeditious manner possible.

Petitioner further questions the order of detention because neither the record nor the detention order reflected the facts required in such an order by Children's Rule 22(c) and (d).

In response to the Petition for Review, the State of Alaska makes two arguments concerning the authority of the master of the children's court. The initial argument asserts that the master had jurisdiction to detain the Petitioner because in fact masters under Children's Rule 2 have the power of superior court judges. Secondly, the State of Alaska argues that the fact that

---

4. The posture of this case is a result of our refusal to stay the dispositive hearing in the children's court pending our consideration of the Petition for Review. To have done so would have prejudiced the Petitioner and hindered his proper care and guidance.

5. The leading case is Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), where the Supreme Court of the United States, in deciding to review an ICC order that had since expired, stated as follows at 515, 31 S.Ct. at 283:

> The question involved in the orders of the Interstate Commerce Commission are usually continuing (as are manifestly those in the case at bar) and their consideration ought not to be, as they might be, defeated, by short term orders, *capable of repetition, yet evading review*, and at one time the government, and at another time the carriers, have their rights determined by the Commission without a chance of redress. (Emphasis supplied.)

The doctrine has been relied upon recently by the Supreme Court of the United States in Sibron v. New York, 392 U.S. 40, 52–53, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969), and Hall v. Beals, 396 U.S. 45, 50–51, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969) (dissenting opinions of Justices Brennan and Marshall). See also the Note, Mootness on Appeal in the Supreme Court, 83 Harv.L.Rev. 1672, 1685–87 (1970).

6. For a more extended discussion of this doctrine as applied to a juvenile case similar to the one at bar, *see* In re M, 3 Cal.3d 16, 89 Cal.Rptr. 33, 473 P.2d 737, 741–743 (Cal.1970).

Petitioner had committed past offenses was sufficient under Children's Rule 22(c) and (d) to permit him to be incarcerated in cases "where such detention appears as a matter of record to be necessary for the protection of the juvenile or others."

The authority of a master of the family court is discussed in Children's Rule 2(a) (1) and (2)[7] which refers to the authority specifically set forth in the order of appointment. The order of appointment of the standing master in this case provided as follows:

> Your responsibility as Master will require you to notice and conduct hearings; pass on the admissibility of evidence; make findings of fact, conclusions of law; recommend the issuance of orders and judgments to the judge of the family court, or to any other judge presiding over the family court during the absence of the family court judge. You are authorized to administer oaths; direct and control proceedings before you in accordance with the Rules of Civil Procedure and the Rules of Children's proceedings and Rules of Evidence where applicable.

■ The above order of appointment only gave the master authority to make findings of fact, conclusions of law, and recommendations to the judge of the family court. There is nothing in that order which gave general judicial power to Master Ross.[8] Thus, he had no authority to order temporary detention except under the limited grant of power of Rule 2(a) (6).

This conclusion is supported by Children's Rule 2(a) (4) which provides:

> At the conclusion of all proceedings and hearings the master shall promptly prepare a report upon the matters submitted to him * * * [and] promptly submit to the superior court judge * * * the report together with written findings, conclusions and recommendations and with such proposed orders, adjudications, dispositions or commitments as may be required * * *.

■ Children's Rule 2(a) (6) does provide that where the authority of the master has been limited under Rule 2 or under the

---

7. Children's Rule 2(a) (1) and (2) reads in part as follows:
(1) The primary responsibility for hearing, adjudicating and disposing of children's cases involving delinquency or dependency or children in need of supervision rests on the superior court. Such responsibilities shall be delegated to a master under this rule only in those instances where it is totally impracticable for the superior court to act.
(2) * * * The master shall * * * exercise all the authority of the superior court conferred upon him by his order of appointment. * * *

8. Nor does it appear likely that such judicial power could be conferred on a master, even postulating an intention by the appointing authority to do so. The following Alaska Constitutional provisions deal with the vesting of judicial power:
Alaska Const. Art. IV, § 1:
The judicial power of the State is vested in a supreme court, a superior court, and the courts established by the legislature. * * *
Alaska Const. Art. IV, § 4:
Supreme Court justices and superior court judges shall be citizens of the United States and of the State, licensed to practice law in the State, and possessing any additional qualifications prescribed by law.
Alaska Const. Art. IV, § 5:
The governor shall fill any vacancy in an office of supreme court justice or superior court judge by appointing one of two or more persons nominated by the judicial council.
Alaska Const. Art. IV, § 6:
Each supreme court justice and superior court judge shall, in the manner provided by law, be subject to approval or rejection on a nonpartisan ballot at the first general election held more than three years after his appointment.
Thereafter, each supreme court justice shall be subject to approval or rejection in a like manner every tenth year, and each superior court judge, every sixth year.
AS 22.10.020 provides the jurisdiction of the superior court. AS 22.10.090 sets forth the qualifications of superior court judges. AS 22.10.100 provides the method of filling vacancies in the office of a superior court judge.

order of appointment, the master may "nevertheless order the child into temporary detention where the welfare of the child and that of the public so require." In all such cases, however, it is the duty of the master "to transfer the matter to the superior court in the *most expeditious manner possible*." (Emphasis supplied.) That duty limits the power of the master. He has no power under Rule 2(a) (6) to order detention for periods longer than are necessary to permit the superior court to review the case and to enter its own order of temporary detention, release from detention, or other appropriate disposition.

On November 13, 1970, the master filled out a report entitled "Report, Findings, Conclusions and Recommendations of Master for Superior Court," which contained a description of those who appeared at arraignment, and the master's findings and conclusions.[9] A separate document entitled "Adjudication", finding the minor a delinquent child, was signed by the superior court judge on recommendation of the master on the same day. In addition to these documents, there was a temporary detention order bearing the same date stamp signed by the master with no indication whether it had been approved by a superior court judge.

From these facts there are three conclusions which may be drawn: either (1) the superior court approved all the documents, including the detention order; (2) the superior court felt the master had authority to sign such temporary detention orders; or (3) the order was not called to the attention of the superior court, which expressed no view of the order one way or another.[10]

If the order was not approved by the superior court or if the superior court felt that the master had authority to sign such an order, then the result would be the same. Children's Rule 2(a) (6) does not authorize the master to order temporary detention for periods of three to six weeks.

 If the superior court approved the order of temporary detention, then it would appear that the superior court failed to comply with Children's Rule 22(c) and (d). In this regard, Children's Rule 22(c) and (d) provides specifically as follows:

(c) * * * Detention in a security institution may be provided for under a temporary order as provided herein only where such detention appears as a matter of record to be necessary for the protection of the juvenile or others.

(d) In all orders of disposition, including temporary orders, the court shall provide written findings of fact supporting the disposition ordered.

The temporary detention order as issued provided as follows:

Child should be detained for his own protection in view of present offense and past violations.

The order does not set out facts sufficient to comply with Children's Rule 22(d) nor does the record disclose sufficient facts to meet the requirements of Children's Rule 22(c). A recitation of Petitioner's previous history is not sufficient in this case to show that incarceration was necessary for the protection of the petitioner or others.

Incarceration pending a disposition hearing under our present Children's Rules is an extraordinary remedy. Therefore, there must be strict compliance with the Children's Rules authorizing such temporary detention. The statements of the intake officer, the successful completion of

---

9. Since the rules did not provide Petitioner with a clear direction as to how to appeal to the superior court, or whether he could, we have permitted Petitioner to raise his objections to the order in the Supreme Court. In normal cases any objection to the findings of the master or his recommendations should be made to the su-perior court under Children's Rule 2(a) (5).

10. In the master's report and findings, a check mark was placed on the mimeographed form indicating that the master had found that the juvenile should remain in custody pending the disposition hearing.

supervised probation in the past, and the total lack of any evidence indicating special circumstances requiring incarceration between the adjudication and disposition hearings should not have been disregarded.

It was error for the temporary detention order to be issued in this case. The order is reversed and the superior court is instructed to proceed in the future in accord with this opinion.[11]

---

11. This opinion does not affect the final result in this case and therefore only the order of temporary detention is ordered stricken.