In re John DOE, Appellant,

v.

STATE of Alaska, Appellee.

No. 1240.

Supreme Court of Alaska.

July 9, 1971.

Victor D. Carlson, Public Defender, R. Collin Middleton, Asst. Public Defender, Anchorage, Irwin Ravin, Supervising Atty., Alaska Legal Services, Ketchikan, for appellant.

G. Kent Edwards, Atty. Gen., Juneau, Robert J. Mahoney, Asst. Atty. Gen., Anchorage, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

## OPINION

CONNOR, Justice.

On January 8, 1970, a petition was filed in the superior court asking that John Doe be declared a delinquent child. The petition, signed by a probation-parole officer, charged John Doe, then a child of sixteen, with having sold, on December 23, 1969, one-half a tablet of lysergic acid diethylamide (LSD) to one Fred Lee Williams for three dollars. This act was alleged in the petition to be in violation of AS 17.12.010.[1] A summons was issued on January 8, 1970, directing John Doe to appear before the juvenile judge the following day at 2:30 p. m., to "assist the Court in rendering a final determination in the above-entitled action."

John Doe appeared with his parents at the 2:30 p. m. hearing on January 9, 1970. Mr. Irwin Ravin was appointed as counsel for John Doe at that time. The child denied the petition, and the superior court prepared to commence immediately with the adjudication of the merits of the petition. John Doe's counsel indicated that he was not ready and asked for a continuance so that he could prepare the defense. January 9, 1970, was a Friday. The court continued the hearing until the following Monday morning. With the hearing on the merits now set for Monday, the court inquired of the district attorney whether he wished to be heard on the subject of John

Doe's detention over the weekend. The district attorney stated:

"This defendant has threatened one of our witnesses and our witnesses have been subject of threats generally and there are threats out in the community and threats against life and I—I would ask for that reason that he be detained."

John Doe's attorney denied knowledge of any threats and objected to the district attorney's hearsay statement. He further stated that John Doe had never previously been before the children's court; that there had been no showing under the rules that the child should be detained; that detention would hamper the preparation of the defense; and that the state had had knowledge of John Doe's alleged conduct since December 23, 1969, but had not asked until January 9, 1970, that the boy be placed in custody. The court ordered that "this defendant be committed to the detention home over this weekend so that he'll be present at 9:00 or shortly thereafter for the hearing in this case." A commitment order was issued.[2]

On the morning of January 12, 1970, John Doe's adjudication hearing commenced. Another delinquency adjudication hearing had been set for that morning, in the matter of Richard Moe. Richard Moe was also charged with having sold drugs to Fred Lee Williams, although his offense is factually unrelated to John Doe's. Moe, too, was summoned January 8, 1970, to appear January 9, 1970, and Mr. Ravin was appointed January 9, 1970, to represent him also. The two adjudication hearings were interspersed and were conducted over several days between January 12, 1970, and January 17, 1970.[3]

1. AS 17.12.010 provides: "Except as otherwise provided in this chapter, it is unlawful for a person to manufacture, compound, counterfeit, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, a depressant, hallucinogenic or stimulant drug."

AS 17.12.150(3) states: "depressant, hallucinogenic or stimulant drug" means: (A) cannabis, psilocybin, dimethyltryptamine, lysergic acid diethylamide, and every

other substance having similar physiological effects."

2. The order itself stated that the grounds for detention were that the boy would harm himself or harm others.

3. The appeal in the matter of Richard Moe, No. 1239, was consolidated with this appeal by order of the Supreme Court dated January 27, 1970. On May 15, 1970, Richard Moe's appeal was dismissed and the boy released.

At the outset, the state wished to call its chemical expert out of order. Because the witness was from San Francisco and had performed tests on the substances in both children's cases, the state wished to have his testimony presented for both cases that morning. Mr. Ravin objected, stating:

"MR. RAVIN: I object to that, your Honor. I asked for a continuance and I got the weekend, and I don't think that's fair to the defendants. After all, these boys were served with a summons on Thursday night, and they're forced to go to trial on Monday morning. * * * [The] state has had since early December to prepare its case. The petition in one case says that the offense took place on December 10, the petition in the other case says it took place on December 23rd. They've had all that time to prepare their case. I've had no time.

* * * * * *

I think its just another instance of the unfairness, where the state has everything their way and the defendants have everything against them. I think its a denial of due process, up to this point already."

The superior court allowed the witness to be called out of order. This witness, John Kirk, was employed as a forensic chemist at the Bureau of Narcotics and Dangerous Drugs in San Francisco. He testified in the John Doe matter that he received a substance in the mail and performed chemical tests upon it. He testified that in his opinion the material was lysergic acid diethylamide. On cross-examination he testified that he did not test the material to determine whether the sample was levorotatory LSD, one of the optical isomers of lysergic acid diethylamide.

Fred Lee Williams, a police informer, testified that on December 23, 1969, John Doe approached him and asked if he would like to buy half a tablet of LSD for $3.00. Williams said he would, but had to get the money. Williams then went to the police department, obtained $3.00, and went with a witness to an appointed place where the sale took place. The witness, a high school classmate of John Doe, testified that he went with Williams to meet John Doe. He saw Williams give John Doe money and John Doe give Williams a piece of tinfoil. Williams testified on cross-examination that he had, before the alleged sale, approached John Doe many times, asking him if he had any drugs or could obtain some for him.

Officer Burnham testified that on December 23, 1969, Williams told him he had a chance to purchase some "Sunshine" (LSD). Burnham testified further than on December 23, 1969, Williams brought him half a tablet of what was believed to be LSD. He also testified that after preliminary tests were performed on the material at the Ketchikan police station, he mailed the material to the Bureau of Narcotics and Dangerous Drugs in San Francisco.

Counsel for John Doe called two witnesses. One, the boy's girlfriend, testified that on one occasion prior to December 23, 1969, Fred Lee Williams had approached her and John Doe on the street. Williams took John Doe aside so she could not hear what Williams said to him, but she did hear John Doe state to Williams, "Quit bugging me." The other witness for John Doe was a high school student who testified that Williams had a reputation in the community for being a liar.

Following argument by both counsel, the superior court found that the allegations in the petition were true and adjudged the boy a delinquent. A dispositive hearing was conducted three hours later, and John Doe was ordered to be committed to the custody of the Division of Corrections, Department of Health and Welfare, until his eighteenth birthday, and to be placed in either the McLaughlin home or the Wasilla Youth Camp until his seventeenth birthday, at which time probation might be considered. This appeal followed.

1. *Right to Release Pending the Adjudication Hearing.*

Appellant John Doe asks this court to hold that children have a constitutional

right to bail under the Alaska Constitution,[4] or in the alternative, that the Alaska Rules of Children's Procedure contravene the bail provision of the Alaska Constitution to the extent that they allow detention of children for reasons other than availability for trial.

Children's Rule 7(b) provides:

"No juvenile shall be detained nor may any detention be continued prior to a first hearing of the case unless the court finds at a detention inquiry, which must be held not more than 48 hours after the juvenile has been taken into custody, not excluding weekends and holidays, that:

(1) Detention is necessary to protect the juvenile from others; or

(2) The juvenile will not be available for subsequent court proceedings; or

(3) The juvenile will cause harm to himself or to others if he is not detained."

While the United States Supreme Court has not held that children must be afforded due process rights in the preadjudication stages of the juvenile process,[5] we believe that due process safeguards are necessary not only at the adjudicative hearing, but at any stage which may result in deprivation of the child's liberty.

▉ Under the Alaska Constitution, all persons accused of a criminal offense are entitled to be released on bail except for capital offenses where the proof is evident or the presumption great.[6] In Reeves v. State, 411 P.2d 212, 215 (Alaska 1966), we stated:

"The purpose of bail in the administration of criminal justice is to insure the defendant's appearance at trial."

We held in that case that while an adult criminal defendant has a constitutional right to be released on bail (except in certain capital cases), he does not have an absolute right to be released on his own recognizance, without bail, if he is financially unable to post the bond. We cited with approval and emphasis, however, the following language from Bandy v. United States, 81 S.Ct. 197, 198, 5 L.Ed.2d 218, 219–220 (1960):

"* * * the right to release is heavily favored and * * * the requirement of security for the bond may, in a proper case, be dispensed with. * * * For there may be other deterrents to jumping bail: long residence in a locality, the ties of friends and family, the efficiency of modern police. All these in a given case may offer a deterrent at least equal to that of the threat of forfeiture."

Therefore, in adult criminal prosecutions, the central consideration with respect to pretrial release is whether the defendant will appear for trial. This is true for setting the amount of bail and for ruling on applications to be released on one's own recognizance. Society's interest in pretrial freedom for persons accused of crimes is strong. Under both the United States and Alaska Constitutions, excessive bail may not be imposed.[7] Excessive bail has been held to be that which goes beyond the amount reasonably necessary to assure the defendant's presence at trial. Stack v. Boyle, 342 U.S. 1, 5, 72 S.Ct. 1, 96 L.Ed. 3 (1951). The presumption of innocence, central to our system of criminal justice, also dictates in favor of pretrial release. As the United States Supreme Court stated in Stack v. Boyle, supra:

"Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." 342 U.S., at 4, 72 S.Ct. at 3.

---

4. Alas.Const. art. I, § 11, states in part: "Section 11. *Rights of Accused.* In all criminal prosecutions, the accused * * * is entitled to be * * * released on bail, except for capital offenses when the proof is evident or the presumption great * * *."

5. In Re Gault, 387 U.S. 1, 30, n. 48, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

6. Alas.Const. art. I, § 11, set out in part in n. 4, supra.

7. U.S.Const., amend. VIII; Alas.Const. art. I, § 12.

Certain problems peculiar to children are encountered in children's proceedings, however, which make a blanket application of the right to pre-adjudication release upon adequate assurance of future court appearance unworkable and undesirable from the child's viewpoint. In some cases, a parent whose child has become involved in delinquency proceedings may be unwilling to take the child back into the home pending an adjudication hearing. In other cases, a child may not wish to return to his home, or facts adduced at a detention inquiry may show that he should not return home, because the child fears he will be in danger of abuse at the hands of his parents. But the existence of these problems does not mean that the right to remain free pending an adjudication proceeding should be denied to children. Other courts have found that the children's rules can be construed and applied so that children are provided with an adequate substitute for bail.[8]

In the case of RLR v. State, Op. No. 706, 487 P.2d 27 (Alaska, 1971), we held that the fundamental constitutional right of public trial by jury must be afforded children in delinquency adjudication proceedings, in spite of the possible interference with the benevolent motives of the children's court system which have, in the past, justified denial of those rights. We believe, however, because of the peculiarities of children's proceedings, that the present adult bail system would be practically unsuitable as a device for securing the child's future appearance before the court, and would not necessarily result in the

child's release. Because contracts entered into by minors have been held to be voidable,[9] a bail bondsman surely would be unwilling to deal directly with a child in providing a bail bond. Unless the child's parents are willing and financially able to secure the bond, the child's right to bail will not result in release. Where the child's parents are not able to assure the bail bondsman of their financial security, the often criticized injustices of the adult bail system as applied to indigents would be visited upon the child.[10]

Thus we are faced with conflicting interests. A child who is charged under the children's rules with an act which would be a crime, if committed by an adult, should have no less right to pre-adjudication freedom than an adult criminal defendant has pending trial. On the other hand, a child is in need of some care and supervision. If his parents are not willing to care for the child or if harm will come to the child in his present home situation, the children's court should not allow the child to return or remain at home; yet the child cannot be released entirely on his own responsibility. While these are serious conflicts, we believe they can be reconciled.

■ We hold that a child has the right to remain free pending an adjudication that the child is delinquent, dependent, or in need of supervision, where the facts supporting the petition involve an act which, if committed by an adult, would be a crime, and where the court has been given reasonable assurance that the child will appear

8. Fulwood v. Stone, 129 U.S.App.D.C. 314, 394 F.2d 939 (1967); Baldwin v. Lewis, 300 F.Supp. 1220 (E.D.Wis.1969); In Re William M., 3 Cal.3d 16, 89 Cal.Rptr. 33, 473 P.2d 737 (1970).

9. This court has never ruled on the question of the capacity of minors to contract, and we do not decide that question here. It should be noted, however, that a number of jurisdictions have held that some minors' contracts are voidable. Lakey v. Caldwell, 72 Idaho 52, 237 P.2d 610 (1951); Doenges-Long Motors, Inc. v. Gillen, 138 Colo. 31, 328 P.2d 1077 (1958); General Machinery & Supply Co.

v. National Acceptance Co., 472 P.2d 735 (Colo.App.1970).

10. For commentary critical of the adult bail system, see Foote, Compelling Appearance in Court: Administration of Bail in Philadelphia, 102 U.Pa.L.Rev. 1031 (1954); Paulsen, Pretrial Release in the United States, 66 Colum.L.Rev. 109 (1966); Comment, A Study of the Administration of Bail in New York City, 106 U.Pa.L.Rev. 693 (1958); Comment, Bail: An Ancient Practice Reexamined, 70 Yale L.J. 966 (1961); Comment, Tinkering with the California Bail System, 56 Calif.L.Rev. 1134 (1968).

at future court proceedings. If the facts produced at the inquiry show that the child cannot return or remain at home, every effort must be made to place the child in a situation where his freedom will not be curtailed. Only if there is clearly no alternative available may the child be committed to a detention facility and deprived of his freedom.

■ In the case at bar, the superior court apparently based its detention order on the statement made by the district attorney that John Doe had threatened prosecution witnesses.[11] Initially it should be noted that due process standards must be observed at a detention inquiry since it may result in the deprivation of the child's liberty. Due process requires at the very least that detention orders be based on competent, sworn testimony,[12] that the child have the right to be represented by counsel at the detention inquiry,[13] and that the detention order state with particularity the facts supporting it.[14]

■ We hold, therefore, that the superior court's detention order in this case was invalid on several grounds: first, because it was based on an unsworn, hearsay statement; second, because it was based upon the court's belief, unsupported by any evidence, that the child would engage in unlawful activity if not detained; and third, because the order did not contain any statement of the facts on which the order was based.

The state argues that because review of the detention order was not sought immediately upon its issuance, appellant cannot raise the issue now on appeal. Although the cases cited by the state in its brief in support of this argument do not mention the mootness doctrine as such,[15] we believe that this is the rationale of these decisions which hold that an order denying bail or setting excessive bail must be appealed from immediately. Once the trial is completed, the pretrial detention necessarily ends, and a decision on the question of pretrial bail can have no effect on an appealing defendant.

■ Ordinarily we will refrain from deciding questions where the facts have rendered the legal issues moot. But where the matter is one of grave public concern and is recurrent but is capable of evading review, we have undertaken review even though the question may be technically moot.[16] There is little question that preadjudication detention of children is a matter of public concern, and that it is likely to recur. Further, a decision not to seek immediate review of a detention order in a children's proceeding may not be a purely tactical one, but may involve serious considerations of the child's welfare. Therefore, we find this to be an appropriate case in

11. Although the superior court at the hearing indicated that he was detaining John Doe "so that he'll be present * * * for the hearing * * *," the order itself stated that the child should be detained "for his/her own safety and the safety of others. * * *"

12. Children's Rule 13 states in part: "All testimony in the juvenile court shall be given under oath or affirmation subject to the following exceptions: (1) In its discretion the court may permit the introduction of a verified statement * * * concerning the existence of a juvenile matter, the jurisdiction of the court to entertain the matter, or the temporary detention or release therefrom of a juvenile."

13. In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Bald-

win v. Lewis, 300 F.Supp. 1220 (E.D.Wis. 1969).

14. In Re G.M.B., 483 P.2d 1006 (Alaska, April 8, 1971); Baldwin v. Lewis, 300 F.Supp. 1220 (E.D.Wis.1969).

15. Stack v. Boyle, 342 U.S. 1, 6, 72 S.Ct. 1, 96 L.Ed. 3 (1951); Hemphill v. United States, 392 F.2d 45, 46–47 (8th Cir. 1968); United States v. Radford, 361 F. 2d 777, 781 (4th Cir. 1966), cert. denied, 385 U.S. 877, 87 S.Ct. 158, 17 L.Ed.2d 105 (1966); United States v. Frascone, 299 F.2d 824, 829 (2d Cir. 1962).

16. RLR v. State, Op. No. 706, 487 P.2d 27 (Alaska, 1971); In re G.M.B., 483 P. 2d 1006 (Alaska, 1971); In Re William M., 3 Cal.3d 16, 89 Cal.Rptr. 33, 473 P. 2d 737 (1970).

which to apply the exception to the mootness doctrine.

### 2. The Right to Grand Jury Indictment.

Appellant contends that the superior court lacked jurisdiction to make a determination of delinquency in his case because he was not charged by grand jury indictment. He bases his claim on Article 1, Sec. 8, of the Alaska Constitution.[17]

In Re Gault, supra, held that states must afford juveniles due process of law in delinquency proceedings that might result in the child's incarceration, and accordingly held that juveniles must be afforded the right to be represented by counsel, must be given proper and timely notice, must be given the right of confrontation and cross-examination of witnesses, and afforded the privilege against self-incrimination.[18]

This court in R. L. R. v. State, supra, held that due process requires that children have the right to a public trial by jury where they are charged with acts which would be a crime if committed by an adult. The question, then, is whether due process also requires that the right to grand jury indictment be extended to children's proceedings.

The United States Supreme Court has, since 1884, maintained that the right to a grand jury indictment guaranteed by the Fifth Amendment to the United States Constitution is not applicable to the states through the Due Process Clause of the Fourteenth Amendment. In Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 28 L. Ed.2d 232 (1884), the Supreme Court held that a California murder conviction was not violative of due process because the defendant had been charged by information rather than by grand jury indictment. Since that decision, state criminal proceedings initiated by information rather than by indictment have been upheld as consistent with due process both by the United States Supreme Court and Circuit Courts of Appeal.[19]

The purpose served by grand jury indictment is to give one accused of a serious offense the benefit of having private citizens judge whether there is probable cause to hold the accused for trial. Theoretically this acts as a check upon the district attorney's power to initiate criminal prosecutions, and insures "the protection of the innocent against oppression and unjust prosecution." State v. Shelton, 368 P.2d 817, 819 (Alaska 1962). While we do not retreat from that statement of the grand jury's function, we do not believe that the right to grand jury indictment is so fundamental that due process is offended by alternate methods for instituting children's proceedings where the child is charged with having violated a criminal statute.

As the United States Supreme Court stated in *Gault*, the extension to children of fundamental constitutional rights does not mean a total substitution of the adult criminal model for the present children's court system.[20] The court stated further in this regard:

"The problems of pre-adjudication treatment of juveniles * * * are unique to the juvenile process; hence what we hold in this opinion with regard to the procedural requirements at the adjudicatory stage has no necessary applicability to other steps of the juvenile process." 387 U.S., at 31, n. 48, 87 S.Ct., at 1445.

17. Alas.Const. art. I, § 8, states in part: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the armed forces in time of war or public danger."

18. 387 U.S., at 41, 87 S.Ct. 1428.

19. Kennedy v. Walker, 337 U.S. 901, 69 S.Ct. 1046, 93 L.Ed. 1715, rehearing denied, 337 U.S. 934, 69 S.Ct. 1493, 93

L.Ed. 1741 (1949); Beck v. Washington, 369 U.S. 541, 545, 579, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962); Martin v. Beto, 397 F.2d 741, 746 (5th Cir. 1968); Morford v. Hocker, 394 F.2d 169 (9th Cir. 1968).

20. 387 U.S. 1, at 30, 87 S.Ct. 1428, quoting Kent v. United States, 383 U.S. 541, 562, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). *See also*, In Re Dennis M., 75 Cal.Rptr. 1, 450 P.2d 296, 299 (1969).

Under the Alaska Rules of Children's Procedure, a preliminary investigation must be conducted by an intake officer attached to the court. The purpose of this examination is to determine whether the facts warrant further action and if so, whether the matter should be handled formally or informally.[21] Unlike a grand jury, which has only the alternatives of returning an indictment or not indicting, the intake officer, after talking with the child and his parents may take several courses of action. He may determine that the facts warrant no further action at all, or that the matter is so serious that formal proceedings are indicated. In addition, he may feel the matter should not be completely dropped, but that action short of a formal petition and adjudication is indicated for the child. Children's Rule 4(d) provides:

"If the intake officer, after investigation, believes that in the best interest of the child the matter should be handled on an informal basis, he may thereafter refrain from filing a petition and shall thereafter on behalf of the court, counsel with the child and parents, guardian or custodian, and with their consent and cooperation establish such informal supervision or disposition of the child matter as the circumstances may require."

It should be noted that Children's Rule 8(a) provides:

"Where matters are informally adjusted or disposed of, such disposition precludes any detention, placement, or physical restraint of the juvenile excepting reasonable and sensitive parental supervision and discipline pursuant to the terms of such informal adjustment or disposition."

Thus, there is no possibility that the child may be deprived of his liberty as a result of an informal disposition.

We believe that this preliminary investigation, should the child and his parents agree to participate,[22] has advantages for the child which the grand jury could not duplicate, in that it enables the child and his parents to focus upon their respective and mutual problems, hopefully with professional guidance. The grand jury proceedings, in contrast, are largely secret. The child does not have the right to participate, nor has he the right to have counsel present.

■ In light of the clear advantages to the child which the Rule 4 procedures have over a grand jury proceeding, and since the right to grand jury indictment does not involve fundamental due process, we hold that children, who are charged with acts which would be chargeable only by grand jury indictment if committed by an adult, need not be indicted by a grand jury.

We should add that in this case the record does not indicate that a preliminary investigation was conducted by the probation office or that the child and his parents were notified that they had a right to participate in that investigation. Further, there is no indication in the record that informal proceedings were even considered. Our statement here that the Rule 4 procedures offer a more than adequate substitute for grand jury indictment indicates how important it is that these procedures be followed in every case.

3. *Adequacy and Timeliness of the Notice.*

■ Appellant argues that the manner of service of the summons was defective in that appellant was not personally served. In R. L. R. v. State, supra, we held that personal service upon the child was required. While it appears from the return of service in this case that the petition

---

21. Rules of Children's Procedure, Rule 4.

22. Children's Rule 4(b) provides:
"*Intake Interview.* For the purpose of such investigation, the intake officer shall arrange to interview the child, his parents, guardian, or custodian and any other persons having information as to the facts. Notice to attend the interview shall be given to such parties by letter or telephone and they shall be further informed that their attendance is voluntary."

and summons were not served personally upon appellant, no objection was made by John Doe's counsel to the jurisdiction of the court. Therefore, we hold that the defect was waived for the reasons stated in RLR v. State, Op. No. 706, 487 P.2d 27 at 41 (Alaska, 1971).

A more serious problem exists with respect to the timeliness of the notice. The alleged act occurred on December 23, 1969. A petition was not filed until January 8, 1970. The summons, also issued January 8, 1970, ordered appellant to appear the following day to "assist the Court in rendering *a final determination* in the above-entitled action." (Emphasis supplied.) The summons stated that appellant had the right to be represented by an attorney, but did not mention that he also had the right to have counsel appointed under the circumstances outlined in Children's Rule 15(a).[23]

The hearing commenced on January 9, 1970, and the court appointed Mr. Irwin Ravin of Alaska Legal Services Corporation as counsel for the boy. Immediately following the appointment of counsel, the court proceeded to hear the adjudication of the merits of the petition. Mr. Ravin asked for a continuance so he could prepare the defense. The court continued the hearing until the following Monday morning, January 12, 1970, without inquiring of appellant's counsel as to whether this was sufficient time. The record indicates that Mr. Ravin had been appointed that same afternoon to represent Richard Moe. Moe, like appellant, had been summoned January 8, 1970, to appear January 9, 1970, and his hearing had been continued until Monday, January 12, 1970. Richard Moe's case also involved a sale of drugs. Thus, the court was aware that appellant's counsel had two weekend days in which to prepare the defenses for two serious and apparently factually unrelated cases. Objection was made to the shortness of the continuance on behalf of both children at the Monday morning hearing on Richard Moe's petition.

 While an adult defendant in a criminal case must be brought to trial within a reasonable time,[24] due process requires that he may not be brought to trial too soon. He must be given a reasonable time to consult with his counsel and to prepare his defense. We stated in Klockenbrink v. State, 472 P.2d 958, 965 (Alaska 1970):

> "It is unquestionable that the right to the assistance of counsel of necessity includes the concommitant right to have a reasonable time in which to prepare for trial." (citation omitted).[25]

*Gault* held that a juvenile must be afforded the right to be represented by counsel at the delinquency proceeding, and that a denial of that right violated due process.[26]

---

23. Children's Rule 15(a) provides: "The court shall appoint counsel to represent the juvenile, his parents, guardian, or custodian, when the assistance of counsel is desired, as follows:

(1) For the juvenile when he and his parents, guardian, or custodian are financially unable to employ counsel to assist him.

(2) For the juvenile when his parents, guardian, or custodian are financially able but refuse to employ counsel to assist him and it appears to the court that the interests of justice require such appointment.

(3) For his parents, guardian, or custodian when they are financially unable to employ counsel to represent themselves and the issues are complex or have serious consequences.

(4) For the juvenile, his parents, guardian, or custodian in any situation where, in the opinion of the court, the interests of justice and the nature of the case warrant providing the assistance of counsel at the taxpayer's expense."

24. Glasgow v. State, 469 P.2d 682 (Alaska 1970).

25. *See also*, Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377 (1940); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); People v. Maddox, 67 Cal.2d 647, 433 P.2d 163 (1967); Jennings v. Superior Court, 66 Cal.2d 867, 428 P.2d 304, 310 (1967); Lorenz v. People, 159 Colo. 494, 412 P.2d 895 (1966).

26. 387 U.S., at 41, 87 S.Ct. 1428.

*Gault* also stated:

"Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded * * *." 387 U.S., at 33, 87 S.Ct., at 1446.

We believe that one day's notice is insufficient to afford a reasonable time to prepare.

■■■■ The next question is whether the two-day continuance cured the constitutional defect of the notice in this case. The reasonableness of a continuance depends on the facts, since the granting of continuances is within the discretion of the court.[27] Two weekend days only were afforded appellant's counsel to prepare the defenses of two children on serious charges. Appellant and the other child were first given notice of these charges January 8, 1970. Further, appellant was in custody over that weekend. Although in the case at bar, unlike the case of Klockenbrink v. State, supra, no particular instance of prejudice was shown to have resulted from the shortness of time between charge and trial, we believe the added circumstance in this case that appellant's counsel had the other case to prepare, distinguishes this case sufficiently from *Klockenbrink* that we may presume that appellant's case was prejudiced. We hold, therefore, that the superior court abused its discretion in granting so short a continuance and that this abuse requires a reversal of the adjudication order.

4. *Right of Cross-Examination.*

Appellant contends that he was denied his right of cross-examination in that the superior court unduly limited the cross-examination of the police informer, Fred Lee Williams, as to his bias and reliability.

In this case, as in the case of R.L.R. v. State, supra, the police informer was a crucial prosecution witness. John Doe's

counsel first attempted to cross-examine Williams about the commencement of his relationship with the police, and asked Williams about the first conversation he had with the police regarding commencement of undercover activities. This portion of the cross-examination was as follows:

"Q. [by Mr. Ravin] Now what did— what did you say about narcotics?

A. I can't remember everything I said.

Q. Do you remember anything of what was said?

A. That I (pause) I'd help get information—information about narcotics, users —and users.

Q. Freddy, didn't you talk about more than just giving information?

MR. HAWLEY: Your Honor, I—if I may interpose, I think in the interests of getting to the truth of the matter, I think it would be helpful if counsel would interrogate the witness re—regarding the specific thing he's interested in. I'm sure Mr. Williams doesn't remember this particular incident and this particular conversation because he talked with Officer Burnham so many times.

THE COURT: Objection sustained.

* * * * * *

MR. RAVIN: Your Honor, I wasn't there and the only way we can ever find out what was said was from Freddy.

* * * * * *

THE COURT: Was any more said to the best of your memory?

A. To the best of my memory that's all I can remember."

Later in the cross-examination, Williams apparently remembered more of that first conversation and counsel for the child tried to reopen the line of questioning as to the content of that conversation, but the court sustained an objection that his question had been asked and answered.

"MR. RAVIN: Now, Your Honor, he said Officer Burnham talked to him

27. Spight v. State, 450 P.2d 157 (Alaska 1969); State v. George, 100 Ariz. 350, 414 P.2d 730 (1966); Jennings v. Superior Court, 66 Cal.2d 867, 59 Cal.Rptr. 440, 428 P.2d 304 (1967); State v. Polson, 92 Idaho 615, 448 P.2d 229 (1968).

about making a buy. He never—never answered any questions about what he said.

THE COURT: Oh, he's covered it."

Williams testified that there was at the time of the hearing a misdemeanor charge pending against him, arising out of a theft from a liquor store. He testified that the charge was lowered from burglary not in a dwelling to petty larceny on November 26, 1969. There was a conflict in his testimony as to whether he spoke to Officer Burnham about being an undercover agent for the police before or after the charges were dropped. John Doe's counsel tried to question Williams about why the charges were lowered, but was not allowed to continue. The court stated, "I think it calls for speculation." Counsel was, however, permitted to ask Williams whether there was any relation between his working for the police and the fact that the charges were lowered to a misdemeanor. Williams answered, "No."

Williams also testified that three to four weeks before the date of the hearing he had taken LSD. That would have been fairly close to the date of the alleged sale of LSD by John Doe. Mr. Ravin asked Williams several questions about the effect the LSD had on his senses. Williams stated it affected his hearing and suggested it distorted his sense of time. He stated, "[I]t seemed like it was always late—after it got dark." Mr. Ravin then attempted to continue examining Williams as to the effects of the drug, but the district attorney objected on the ground that the matter had been covered. The objection was sustained.

▇▇▇ The right of liberal cross-examination of a witness as to his bias is well established.[28] Appellant's counsel should have been permitted greater latitude in questioning Williams as to his possible motives for testifying. It was an abuse of discretion to restrict the cross-examination to the extent done so in this case. Cross-examination is permissible to show that the witness was under the influence of a drug at the time of the events to which he is testifying at trial.[29] Williams here testified that he had taken LSD "three or four weeks" prior to the January 14 hearing at which he was testifying. He also testified to certain sensory distortions which occurred while he was under the influence of the drug. Counsel should have been permitted to question him further as to the effects of the drug and whether this powerful drug was affecting him on December 23, 1969. To limit cross-examination on this matter was reversible error.

### 5. *Other Issues.*

John Doe has raised several other issues on appeal. First, he argues that because the chemical expert did not determine whether the sample he tested was levorotatory LSD there could be no finding that the sample was hallucinogenic. He argues further that AS 17.12.010 requires a finding that the material is an hallucinogen. Since the case must be reversed on other grounds, we decline to reach this issue.

Appellant also argues that we should apply to his case the holding of In Re Winship,[30] which requires that a finding of delinquency be made only upon proof beyond a reasonable doubt. As to this issue, Children's Rule 21(a) has been amended to provide for a reasonable doubt standard of

28. 3A J. Wigmore, Evidence, § 943 (Chadbourn rev. 1970); Alford v. United States, 282 U.S. 687, 51 S.Ct. 77, 75 L.Ed. 736 (1931); RLR v. State, Op. No. 706, 487 P.2d 27 at 44 (Alaska, 1971).

29. People v. Webster, 139 N.Y. 73, 34 N.E. 730 (1893) (witness allegedly under influence of opium at time she observed killing); Commonwealth v. Morrison, 157 Pa.Super. 366, 43 A.2d 400 (1945) (cross-examination as to whether prosecution witness was "smoking dope cigarettes and drinking stale cider" on evening of alleged crime held proper); see also State v. Smith, 103 Wash. 267, 174 P. 9 (1918); Annot. 52 A.L.R.2d 848 (1957).

30. 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970).

proof in a children's case wherein the child is charged with an act which may result in incarceration. In light of this rule change, and since we are reversing on other grounds, we need not decide whether the reasonable doubt standard was applied in this case.

Finally, appellant argues he was denied bail pending appeal. This issue has been rendered moot by an order dated September 28, 1970, by which we released John Doe from custody of the detention home to the temporary custody of his parents, pending the final determination of this appeal. Similarly, the issue raised as to the severity of the dispositive order has been rendered moot by our reversal of the adjudication of delinquency.

Reversed and remanded.