Charles **ETHEREDGE**, on his behalf and on the behalf of all others similarly situated, Appellant,

v.

Lois **BRADLEY**, Clerk of the District Court for the State of Alaska, Third Judicial District, Appellee.

Nos. 1514, 1525.

Supreme Court of Alaska.

Oct. 27, 1972.

---

1. Beaulieu v. Elliott, 434 P.2d 665 (Alaska 1967).

See also, Alaska, 480 P.2d 414.

Francis M. Flavin and G. E. Stein, Alaska Legal Services Corp., Anchorage, for appellant.

John E. Havelock, Atty. Gen., Juneau, Richard B. Edwards, Asst. Atty. Gen., Anchorage, for appellee.

Before BONEY, C. J., and RABINOWITZ, CONNOR, and ERWIN, JJ.

## OPINION

RABINOWITZ, Justice.

The central issue in this appeal is whether the procedural authorization of summary prejudgment attachment of property provided for in Civil Rule 89 violates the due process guarantees of article I, section 7 of the Alaska constitution and the fourteenth amendment of the United States Constitution.

On July 20, 1970, B. J. Bath, Inc., filed suit against appellant Etheredge to recover a debt allegedly owed it. On July 22, Bath secured a writ of attachment from appellee Bradley, Clerk of the District Court for the State of Alaska, Third Judicial District. Bradley issued the writ pursuant to AS 09.40.010 and Civil Rule 89 without providing notice of hearing to Etheredge. Etheredge's checking account in the amount of $308 was attached at approximately 11:30 a. m., July 23, 1970. Etheredge did not receive notice of this event until the bank called him about 5 p. m. that day. Before Etheredge received actual notice of the attachment of his checking account funds, he had written several checks which the bank later returned for insufficient funds.

Etheredge moved to quash the writ of attachment on July 28, 1970. His motion was denied, whereupon he filed a separate class action against Bradley seeking declaratory judgment that Civil Rule 89 is unconstitutional and injunctive relief against further operation of the rule. Etheredge held himself out as a representative of the class of "all persons and their property who have been or might be the object of an unnoticed and unheard prejudgment attachment of assets under Rules 88 and 89 of the Alaska Rules of Civil Procedure."

After he had instituted this class action, Etheredge consented to a judgment on the merits in the suit which Bath had filed against him. Answering Etheredge's class action complaint, Bradley admitted that the practice of her office was to issue writs of attachment without affording notice or opportunity for hearing to the person whose property is to be seized under the writ. Thereafter, both Etheredge and Bradley moved for summary judgment. The superior court granted summary judgment to Bradley. Etheredge has appealed the denial of his motion for summary judgment. Bradley has cross-appealed from the superior court's determinations (1) that Etheredge adequately represented his named class, and (2) that the declaratory judgment suit was not mooted by virtue of Etheredge's entry into a consent judgment in the Bath litigation.

Etheredge argues that the fourteenth amendment of the United States Constitution and article I, section 7 of the Alaska constitution guarantee due process in the taking of a person's property. He contends that in this context due process requires prior notice and hearing except in extraordinary circumstances, particularly in the case of property which provides the necessity of life to an individual or family. Etheredge further asserts that checking accounts should be considered that sort of "specialized property" which is subject to the most vigilant of protections. While recognizing the balancing of interests involved in defining due process, Etheredge states that the debtor's interest combines with the state's related interest to outweigh any interest the creditor can assert for the summary seizure of a debtor's property without prior notice or hearing.

Bradley in turn argues that attachments historically have been found to satisfy due process demands where, as in Alaska's pro-

cedures, some hearing is provided before final disposition of the property. In Bradley's view, Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969), is limited to wage garnishment practices and cases which occasion "extreme hardship" to the debtor, both of which factors were stipulated out of the instant case.

*Sniadach* involved a prejudgment wage garnishment under a Wisconsin statute which allowed issuance of a garnishee summons at the request of a creditor's attorney, without a prior hearing on the underlying claim. While recognizing that summary interference with property interests may satisfy due process standards in "extraordinary situations," such as to protect public health or in dealing with insolvent financial institutions, the Supreme Court stated:

> Where the taking of one's property is so obvious, it needs no extended argument to conclude that absent notice and a prior hearing . . . this prejudgment garnishment procedure violates the fundamental principles of due process.[1]

In *Sniadach,* no need for special protection for the state or creditor was shown since the defendant was a Wisconsin resident over whom personal jurisdiction was readily available. There the Supreme Court was concerned with the hardship created by a procedure which deprived the debtor of his means of existence and characterized wages as "a specialized type of property presenting distinct problems in our economic system."[2]

The hardship theme was picked up and emphasized again in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In that case, the Supreme Court held that in order to satisfy due process

welfare recipients were entitled to an evidentiary hearing prior to termination of benefits. In the context of the need of the welfare recipient-plaintiffs, the Supreme Court said:

> The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer grievous loss," . . . and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Accordingly, . . . "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action."[3]

Since Sniadach v. Family Finance Corp. and Goldberg v. Kelly, there has been some confusion in federal and state courts as to the implications of these decisions. It was not clear whether the Supreme Court was ruling solely on constitutional due process grounds or was acknowledging a "hardship" exception to venerable prejudgment remedies. Another area of confusion was whether the factual context of *Sniadach* could be taken as describing the full extent of the opinion's reach, or whether the language "specialized type of property" implied a somewhat larger category of affected property rights.

Of the courts that resisted extension of *Sniadach,* some have expressly limited *Sniadach* to wage garnishment proceedings.[4] Others have attempted to distinguish the sort of property interest involved from the "specialized type of property"[5]

---

1. Sniadach v. Family Fin. Corp., 395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed. 2d 349, 354 (1969) (citation omitted).

2. *Id.* 395 U.S. at 340, 89 S.Ct. at 1822, 23 L.Ed.2d at 353.

3. Goldberg v. Kelly, 397 U.S. 254, 262–263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287, 296 (1970) (citations omitted).

4. *E. g.,* American Olean Tile Co. v. Zimmerman, 317 F.Supp. 150 (D.Hawaii 1970) ; Michael's Jewelers v. Handy, 6 Conn.Cir. 103, 266 A.2d 904 (1969).

5. Notably in replevin actions on sales contracts, *e. g.,* Fuentes v. Faircloth, 317 F. Supp. 954 (S.D.Fla.1970), rev'd *sub nom.,* Fuentes v. Shevin, 407 U.S. 67, 92

referred to in *Sniadach.* Still others have focused on the hardship element and the purpose for which the attachment is used.[6]

The courts that have used *Sniadach* as the basis for re-evaluating summary pre-judgment remedies by which persons are deprived of their property have recognized that the rationale of *Sniadach* was grounded in fundamental notions of due process rather than in considerations of hardship.[7] Three courts have followed *Sniadach* to its logical conclusion. In Larson v. Fetherston, 44 Wis.2d 712, 172 N.W.2d 20 (1969), the Supreme Court of Wisconsin noted that despite the reference to hardship in *Sniadach* there was no valid distinction between wages and other types of property. Ruling that there was no reason to treat wages in the employer's hands differently from wages deposited in a bank or other financial institutions by the employee, the Wisconsin court went on to state that due process violations should not turn on the type of property involved. In Jones Press, Inc. v. Motor Travel Services, Inc., 286 Minn. 205, 176 N.W.2d 87 (1970), the Minnesota Supreme Court held *Sniadach* extends beyond wages, hardship, and injustice and applied *Sniadach* to prejudgment attachment of accounts receivable. In Randone v. Appellate Department of Superior Court of Sacramento County, 5 Cal.3d 536, 96 Cal.Rptr. 709, 488 P.2d 13 (1971), the Supreme Court of California applied *Sniadach* to invalidate California's statute which provided for summary judgment attachment remedies. In part, the court said:

California's attachment statute violates this procedural due process precept by

sanctioning in substantially all contract actions attachment of a debtor's property, without notice and hearing. Nor is the overbroad statute narrowly drawn to confine attachments to extraordinary circumstances which require special protection to a state or creditor interest.[8]

After the briefs were filed and argument heard in this appeal, the Supreme Court of the United States decided Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). In *Fuentes* the Supreme Court expressly rejected the narrow reading of *Sniadach* which Bradley has urged in this appeal. *Fuentes* involved the constitutionality of Florida and Pennsylvania statutes providing for the summary seizure of goods or chattels upon the ex parte application of any other person who claims a right to them and posts a security bond. The Supreme Court put the constitutional issue as "whether these statutory procedures violate the Fourteenth Amendment's guarantee that no State shall deprive any person of property without due process of law." [9] Invalidating Florida's and Pennsylvania's summary replevin procedure, Justice Stewart, in writing for the majority, said in part:

For more than a century the central meaning of procedural due process has been clear: "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must be notified." . . . It is equally fundamental that the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." . . .

S.Ct. 1983, 32 L.Ed.2d 556 (1972); *contra* Brunswick Corp. v. J. & P. Inc., 424 F.2d 100 (10th Cir. 1970).

6. Raised in the context of foreign attachments, *e. g.,* Robinson v. Loyola Foundation, Inc., 236 So.2d 154 (Fla.Ct.App. 1970).

7. *See* Laprease v. Raymours Furniture Co., 315 F.Supp. 716 (N.D.N.Y.1970); Klim v. Jones, 315 F.Supp. 109 (N.D.Cal.

1970); Blair v. Pitchess, 5 Cal.3d 258, 96 Cal.Rptr. 42, 486 P.2d 1242 (1971).

8. Randone v. Appellate Dept. of S.Ct. of Sacramento Co., 5 Cal.3d 536, 555, 96 Cal.Rptr. 709, 728, 488 P.2d 13, 32 (1971), cert. denied, Northern California Collection Service v. Randone, 407 U.S. 924, 92 S.Ct. 2452, 32 L.Ed.2d 811 (1972).

9. 407 U.S. 67, 92 S.Ct. at 1989, 32 L.Ed. 2d at 564.

The primary question in the present cases is whether these state statutes are constitutionally defective in failing to provide for hearings "at a meaningful time." The Florida replevin process guarantees an opportunity for a hearing after the seizure of goods, and the Pennsylvania process allows a post-seizure hearing if the aggrieved party shoulders the burden of initiating one. But neither the Florida nor Pennsylvania statute provides for notice or an opportunity to be heard *before* the seizure. The issue is whether procedural due process in the context of these cases requires an opportunity for a hearing *before* the State authorizes its agents to seize property in the possession of a person upon the application of another.

. . . . . .

If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented.[10]

Concerning the proper construction of *Sniadach* and *Goldberg,* the Supreme Court in *Fuentes* stated that these cases had "little or nothing to do with the absolute 'necessities' of life but establishing that due process requires an opportunity for a hearing before a deprivation of property takes effect." [11] The Supreme Court also went on to clarify its *Sniadach* comment on extraordinary circumstances justifying a pre-hearing seizure. The requisite ele-

ments are: (1) The seizure must be directly necessary to secure an important governmental or general public interest; (2) There must be a special need for very prompt action; (3) The state must maintain strict control over such summary prehearing seizures by permitting only those governmental officials who are responsible for determining the necessity and justification for summary seizure to do so under narrowly drawn standards.

 The Supreme Court noted that the relative weight of property interests interfered with by prejudgment remedies is relevant to the form of notice and hearing. But *Sniadach* and *Fuentes* instruct that, except in the aforementioned "extraordinary situations," due process requires some form of notice and hearing to establish the probable validity of the plaintiff's underlying claim before the defendant can be temporarily deprived of a property interest that "cannot be characterized as de minimus." [12] In our opinion, *Sniadach* and *Fuentes* preclude adoption of the "balance of interests" approach suggested by the dissent. Thus, it is clear that *Sniadach* is a due process decision; that *Sniadach* is not limited to protection of "necessities of life"; and that procedural due process mandates that a hearing be held at a meaningful time, which is defined as "a time when deprivation can still be prevented." Alaska provides for attachment of property

10. *Id.* at 80, 92 S.Ct. at 1994, 32 L.Ed. 2d at 569–570 (emphasis in original) (citations omitted).

11. *Id.* at 88, 92 S.Ct. at 1998, 32 L.Ed. at 574.

12. *See Id.* at 67, 92 S.Ct. 1983, 32 L.Ed. 2d at 575 n. 21; Sniadach v. Family Fin. Corp., 395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349, 354 (1969) (Harlan, J., concurring).

A deprivation is not necessarily "de minimus" merely because the defendant's loss can be measured in monetary terms and "remedied" by damages for wrongful attachment. *See* Fuentes v. Shevin, 407 U.S. 67, 80, 82, 92 S.Ct. 1983, 1994, 1995, 32 L.Ed.2d 556, 570–571 (1972).

"De minimus" might refer to attachment of real property already heavily encumbered, therefore not significantly diminishing the debtor's use of that property pending litigation. *See, e. g.,* Black Watch Farms, Inc. v. Dick, 323 F.Supp. 100, 102 (D.Conn.1971) (real property previously encumbered for $22 million, attachment for $4 million held de minimis). *See also* Note, Attachment in California: A New Look At An Old Writ, 22 Stan.L. Rev. 1254, 1277–1279 (1970).

Moreover, the availability of a procedure by which the defendant may secure the release of his property by posting his own bond, AS 09.40.110, does not cure the defect of a summary deprivation. The defendant would be deprived of security necessary to post bond.

by rule of procedure.[13] It is undisputed that Alaska's attachment rule of procedure contemplates the taking of property. Civil Rule 89 cannot be squared with the procedural due process principles elaborated in *Sniadach* and *Fuentes*; it does not afford the defendant a meaningful opportunity for a hearing before his property is seized by process issued by the state upon ex parte application of another person. Civil Rule 89 may permit some attachments that cause only de minimis deprivations, but the rule is not confined to such deprivations. Under Civil Rule 89(a), the clerk of court au-

13. The applicable rule, Civ.R. 89, provides in relevant part:

(a) Affidavit of Plaintiff—Issuance of Writ. A writ of attachment shall be issued by the clerk when the plaintiff or anyone in his behalf shall file an affidavit showing:

(1) That the action is one upon an express or implied contract for the payment of money, and stating the facts and circumstances relating thereto.

(2) That the sum for which the attachment is asked is an existing debt due and owing from the defendant to the plaintiff, over and above all legal setoffs or counterclaims.

(3) That the payment of such debt has not been secured by any mortgage, lien or pledge upon real or personal property, or if so secured, that the value of the security (specifying its value) is insufficient to satisfy any judgment that may be recovered by the plaintiff in the action.

(4) That the attachment is not sought nor the action prosecuted to hinder, delay, or defraud any creditor of the defendant.

(b) When Defendant Non-Resident. In an action upon an express or implied contract against a defendant not residing in the state, the affidavit need only show:

(1) That the action is one upon an express or implied contract against a defendant not residing in the state.

(2) That the sum for which the attachment is asked is an existing debt due and owing from the defendant to the plaintiff.

(3) That the attachment is not sought nor the action prosecuted to hinder, delay or defraud any creditor of the defendant.

(c) Writ. The writ shall be directed to a peace officer and shall require him to attach and safely keep property of the defendant not exempt from execution sufficient to satisfy the plaintiff's demand (the amount of which shall be stated in conformity with the complaint), together with costs and expenses. Several writs may be issued at the same time and delivered to different peace officers. Additional writs may be issued where previous writs have been returned unexecuted, or executed in an amount insufficient to satisfy the full amount of plaintiff's claim.

(d) Execution of Writ. The peace officer shall execute the writ without delay . . . .

. . . . .

(g) Redelivery of Property. The peace officer shall deliver any of the attached property to the defendant, or to any other person claiming it, upon his giving a written undertaking, executed by two or more sufficient sureties, engaging to redeliver it, or pay the value thereof to the peace officer to whom execution upon a judgment obtained by the plaintiff in that action may be issued.

(h) Discharge of Attachment Where Perishable Goods Have Been Sold. Whenever the defendant shall have appeared in the action he may apply to the court for an order to discharge the attachment on perishable goods which have been sold. If the order be granted, the peace officer shall deliver to the defendant all proceeds of sales of perishable goods, upon the giving by the defendant of the undertaking provided for in subdivision (g).

AS 09.40.010 provides:

(a) At any time after an action has been commenced the plaintiff may make application to the court to have the property of the defendant attached as security for the satisfaction of a judgment that may be recovered in the following cases:

(1) in an action upon an express or implied contract for the payment of money if the contract is neither secured by mortgage, lien, nor pledge upon real or personal property, or, if secured, the security is insufficient to satisfy a judgment that may be recovered by the plaintiff;

(2) in an action upon an express or implied contract against a defendant not residing in the state;

(3) in an action for the collection of a state tax or license fee.

(b) No attachment shall issue if the defendant gives security to pay a judgment that may be recovered as provided in §§ 10–110 of this chapter.

tomatically issues a writ of attachment upon the filing of an affidavit. Lacking is any mechanism for review of the necessity and justification for the seizure by a responsible government official. The rule is not confined to de minimis deprivations. Certainly, the freezing of Etheredge's checking account pending litigation presents one example of a significant interference with property interests authorized by Civil Rule 89. We note the Supreme Courts of California and Wisconsin have concluded that summary prejudgment attachment of bank accounts violates due process.[14]

Similarly, Civil Rule 89 may permit attachments in "extraordinary situations." But it is not narrowly drafted to meet such situations, as required by due process.[15] The public and private interests in preventing defendants from transferring property to defraud creditors may justify summary attachments in cases where such activity is imminent. However, Bath made no showing that Etheredge intended to conceal or transfer his property to avoid a possible judgment, since Civil Rule 89 does not require a plaintiff to make such a showing to a judicial official.

Finally, there is no special state or creditor interest that would justify summary attachment in this case. As in *Sniadach*, Etheredge is a resident of the forum and Bath could have easily obtained personal jurisdiction over him. *Sniadach* and *Fuentes* reject the view that the "public interests," arguably served by Civil Rule 89, of ensuring collectability of debts and of promoting extension of credit justify summary prejudgment remedies.

■ We therefore hold that summary property attachment authorized by Civil Rule 89 violates article I, section 7 of the Alaska constitution and the due process clause of the fourteenth amendment of the United States Constitution.

Our decision that the summary prejudgment attachment procedure provided for by Civil Rule 89 does not meet due process requirements assumes our preliminary conclusions that the case is not moot and that Etheredge can properly maintain a class action.

■■ Mootness is a construction of judicial policy, not of constitutional law.[16] We have therefore adopted [17] the long-standing exception to the mootness doctrine that allows review of questions that, although technically moot in a given case, are "capable of repetition, yet evading review." [18] While our application of this exception has been limited primarily to children's cases, there are other recurrent fact situations that raise matters of grave public concern.[19] Property attachments under Civil Rule 89 presents one such situation.

■ Clerk of Court Bradley has indicated her intent to continue issuing writs of attachment pursuant to Civil Rule 89 immediately after she receives plaintiff's undertaking [20] and affidavit that his action

14. Randone v. Appellate Dep't of S.Ct. of Sacramento Co., 5 Cal.3d 536, 96 Cal. Rptr. 709, 488 P.2d 13 (1971), cert. denied, 407 U.S. 924, 92 S.Ct. 2452, 32 L.Ed.2d 811 (1972); Larson v. Fetherston, 44 Wis.2d 712, 172 N.W.2d 20 (1969). *See also* Jones Press, Inc. v. Motor Travel Services, Inc., 286 Minn. 205, 176 N.W.2d 87 (1970) (holding general attachment violative of due process).

15. *See* Fuentes v. Shevin, 407 U.S. 67, 92, 92 S.Ct. 1983, 2000, 32 L.Ed. 556, 576 (1972); Sniadach v. Family Fin. Corp., 395 U.S. 337, 339, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349, 352 (1969).

16. RLR v. State, 487 P.2d 27, 45 (Alaska 1971).

17. Johansen v. State, 491 P.2d 759, 762 (Alaska 1971); Doe v. State, 487 P.2d 47, 53 (Alaska 1971); RLR v. State, 487 P.2d 27, 45 (Alaska 1971).

18. Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310, 316 (1911); In Re G.M.B., 483 P.2d 1006 (Alaska 1971).

19. Doe v. State, 487 P.2d 47, 53 (Alaska 1971).

20. AS 09.40.020 provides:
 Before the writ is issued, the plaintiff shall give a written undertaking with sufficient sureties to the effect that, if the defendant recovers judgment, the plaintiff will pay all costs

is in contract and qualifies under Civil Rule 89(a) or (b).[21] The rule is quite broad in scope, permitting summary attachment of any property not exempt from execution.[22] Moreover, the plaintiff is not required to prove or allege any special circumstances requiring the immediate attachment of the defendant's property. And the defendant is neither given notice nor an opportunity to present any defense he might have to the plaintiff's underlying claim before the property is attached. The actual form of the levy depends on the type of property.[23] But, unless the plaintiff elects to attach the defendant's real property, the levy necessarily deprives the defendant of any right to use the asset where the attachment remains in force.[24] The attachment gives the plaintiff great leverage: it pressures the defendant to do whatever is necessary to recover his property. Since this pressure often causes defendants to abandon legal rights,[25] a challenge to the constitutionality of Civil Rule 89 may evade review. We therefore conclude that Etheredge's consent to judgment did not moot his constitutional challenge.

■ Moreover, Etheredge's consent to judgment neither removed him from the class he purports to represent nor disabled him from adequately representing that class. Civil Rule 23, in pertinent part, sets forth the criteria for bringing a class action as follows:

(a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

. . . . . .

(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought.

Etheredge represents the class of all alleged debtors with bank accounts that could be attached without a prior hearing, pursuant to Civil Rule 89. His settlement with Bath does not prevent other creditors from attaching his bank account, much less

that may be awarded to the defendant and all damages which he may sustain by reason of the attachment, not exceeding the sum specified in the undertaking, and that, if the attachment is discharged on the ground that the plaintiff was not entitled to it under §§ 10–110 of this chapter, the plaintiff will pay all damages which the defendant may have sustained by reason of the attachment, not exceeding the sum specified in the undertaking. The sum specified in the undertaking shall be equal to the amount claimed by the plaintiff but not less than $100.

21. See note 13, supra.

22. See AS 09.40.030.

23. Alaska Civ.R. 89(d) prescribed the methods of executing writs of attachment as follows:
(d) Execution of Writ. The peace officer shall execute the writ without delay, as follows:
(1) Real property shall be attached by leaving a certified copy of the writ with the occupant of such property,

or if there be no occupant, then in a conspicuous place on such property.
(2) Personal property capable of manual delivery to the peace officer, and not in the possession of a third party, shall be attached by the peace officer taking it into his custody.
(3) Other personal property shall be attached by leaving a certified copy of the writ, and a notice specifying the property attached, with the person having possession of the same, or if it be a debt, then with the debtor.

24. In the Bath litigation, although Etheredge's checking account deposit was not removed from the bank, attachment still prevented him from using the funds.

25. See Note, Attachment in California: A New Look At An Old Writ, 22 Stan.L. Rev. 1254, 1262–1263 (1970); Note, Provisional Remedies in New York Reappraised Under Sniadach v. Family Finance Corp.: A Constitutional Fly in the Creditor's Ointment, 34 Albany L.Rev. 426, 428 (1970); Note, Wage Garnishment in Washington—An Emperical Study, 43 Wash.L.Rev. 743, 753 (1968).

attachments of those accounts owned by other debtors. Moreover, Etheredge suffered a complete wrong at the moment he was deprived of the use of his bank account without procedural due process, as would others similarly treated.[26]

We find the legal question is still vital and common to a class that includes Etheredge. We further find that his interest in the question ensures his adequate representation of that class.[27]

Reversed in part and affirmed in part.

BOOCHEVER, J., not participating.

BONEY, Chief Justice (dissenting).

I am unable to agree with the majority that Alaska Rule of Civil Procedure 89 violates the due process clause of the fourteenth amendment to the United States Constitution.

Because the due process clause affirms fundamental notions of fairness rather than specific rules of law, the words "due process of law" are not susceptible to precise definition.[1] Thus consideration of whether certain procedures comply with or violate the due process clause must begin with an identification of the interests involved.[2] The conflicting interests must then be balanced to determine whether or not those interests supporting the contested procedures outweigh those opposed.[3]

The interests of the parties in an attachment proceeding are obvious: the creditor-plaintiff wishes to collect his money due and to prevent the debtor from hiding his assets available to satisfy the debt; the debtor-defendant has interests in the possession of, the use of, and the ability to alienate his property as well as in ensuring he is not wrongfully deprived of his property. Certain interests of the state must also enter into the balance. There are public interests in ensuring the collectability of debts, in promoting the extension of credit, and in preventing the transfer of property for the purpose of defrauding creditors.[4]

I believe that an attachment procedure, in order to satisfy due process, must further the public interest and protect the

---

26. The United States Supreme Court faced a similar fact situation in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). That case was brought by welfare recipients whose benefits were cut off without prior hearing. The Court affirmed the trial court's finding on the merits, thus tacitly approving the lower court's holding that the case was not mooted by the fact that at the time of trial most of the named plaintiffs had been given post-termination hearings or were getting emergency relief. *Compare* Kelly v. Wyman, 294 F. Supp. 887, 890 (S.D.N.Y.1968), *with* Kelly v. Wyman, 294 F.Supp. 893, 908 (S.D.N.Y.1968), *with* Goldberg v. Kelly, 397 U.S. 254, 256 n. 2, 90 S.Ct. 1011, 25 L.Ed.2d 287, 292 n. 2 (1970). *See also* Torres v. New York State Dep't of Labor, 318 F.Supp. 1313, 1317 (S.D.N.Y. 1970), where the court found the class action on termination of unemployment compensation not mooted by a subsequent hearing since that was not the sort of procedural protection sought.

27. The appellant here urges other claimed errors. Since we find the constitutional issue dispositive, we decline to deal with them.

1. Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230, 1236 (1961); Hannah v. Larche, 363 U.S. 420, 440, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307, 1320, 1321 (1960); Territory of Alaska v. Craig Enterprises, Inc., 355 P.2d 397, 401 (Alaska 1960).

2. Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287, 296 (1970); Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230, 1236 (1961).

3. Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287, 296 (1970); Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865, 873 (1950).

4. Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa.1970); Note, Attachment and Garnishment—Constitutional Law—Due Process of Law, 68 Mich.L.Rev. 986, 996 (1970); Note, Attachment in California: A New Look at an Old Writ, 22 Stan. L.Rev. 1254, 1259 (1970).

creditor's interest without undue detriment to the debtors' rights. With all due respect, I believe that the majority, while greatly protecting the interests of debtors, does so at great harm to the legitimate claims of creditors and of the public. The majority ignores the statutory protections accorded the debtor: the creditor must post a bond for costs and damages in the event he does not prevail;[5] and the debtor may secure the release of his property by posting his own bond.[6]

The majority opinion also creates a legal vacuum. No suggestions are made for procedures which would satisfy the majority's notions of due process. I can see no other meaningful way to protect the interests of creditors, while risking a lesser detriment to the interests of debtors, than is presented by our attachment procedure. An ex parte temporary restraining order would have exactly the same effect in the instant case. There is no difference to a debtor between attaching his checking account[7] and restraining him from using it. In either case he has legal possession but has been denied the use of his property.[8] The majority, by its decision, thus makes pre-judgment attachment impossible without a pre-attachment hearing. Implicitly, a restraining order prohibiting a debtor from alienating the property sought to be attached would likewise not be allowed pending the outcome of the attachment hearing.

I do not believe that we are compelled by recent United States Supreme Court cases to strike down our attachment procedure. I find Fuentes v. Shevin,[9] which the majority regards as controlling, to be distinguishable. That case concerned replevin actions. There the debtors were being deprived, without advance hearing, not only of the ability to alienate but also of the use and the possession of their property. The difference between the instant case and *Fuentes* is that other procedures could easily be devised which would not infringe upon the interests of the debtors and which would protect equally the interests of the creditors.[10] In such circumstances the due process balance tips in favor of the debtors and the contested procedures must be struck down. Here, as discussed above, there are no alternatives available, and the extant procedures should be upheld.

Sniadach v. Family Finance Corp.[11] is likewise distinguishable. There the debtor had no present ability to alienate his seized property, his future wages, at the time of the seizure. The interests of the creditor would not be prejudiced by the short delay required for notice of a hearing. Here, the debtor has the present ability to drain his checking account dry the moment he receives notice. The creditor is, therefore, prejudiced if the debtor receives any advance notice of a hearing.

In short, the instant case is distinguishable from *Fuentes* and *Sniadach* by the nature of the property here involved. In each of those cases, other procedures could

---

5. AS 09.40.020.

6. AS 09.40.110.

7. An attachment is merely a lien, AS 09.40.090.

8. The same is true for other forms of attached property. The debtor may enjoy the use and possession but not consume or alienate other forms of property (such as a color television set) when either they are attached or he is restrained from alienating or consuming them.

9. 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

10. For example, the creditors could obtain ex parte temporary orders restraining the debtors from alienating the property. The interests of the creditors would thereby be protected and the debtors would lose only the ability to alienate, and not the use and the possession of their property.

11. 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed. 2d 349 (1969).

be devised so that the interests of the debtors could receive greater protection with no further prejudice to the interest of the creditors. Here, to overturn Alaska's attachment procedure is to ignore entirely the interest of the state and of the creditors: there is no procedure devisable which could accord any greater protection to the interests of the debtors while not ignoring the interests of the state and of the creditors. Rule 89 should therefore be upheld.

I regard *Sniadach* and *Fuentes* as encroachments into an area of established law. As such I believe that they should be closely read and narrowly applied.

I would therefore affirm the superior court's denial of Etheredge's motion for summary judgment.