Marc GROBER, Appellant,

v.

STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION, ex rel, C.J.W., Appellee.

No. S–7353.

Supreme Court of Alaska.

May 8, 1998.

James Vollintine, Anchorage, for Appellant.

Terisia K. Chleborad, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

MATTHEWS, Justice.

## I. *INTRODUCTION*

A complaint to establish the paternity of then ten-year old C.J.W. was filed against Marc Grober. Grober argues that the action was time barred. Because actions are tolled during a child's minority, we hold that the action was timely filed. Grober also appeals the order requiring him to submit to blood testing, and the court's retroactive application of a newly enacted statute. We hold that Grober's due process rights were not violated, and that the court did not err in retroactively applying a procedural statute. Thus, we affirm.

## II. *FACTS AND PROCEEDINGS*

D.W. gave birth to C.J.W. on February 16, 1982. D.W. claims that she had unprotected sexual intercourse with Grober nine months before C.J.W. was born, and that she did not have intercourse with anyone else at that time. Grober denies having intercourse with D.W. in 1981.

D.W. wished to establish C.J.W.'s paternity when C.J.W. started asking questions about his father. She sought help from the Child Support Enforcement Division (CSED) in May 1992. CSED filed a paternity action against Grober on August 11, 1992, and amended its complaint in September 1992. Grober denied the allegations in the complaint, and filed a motion to dismiss. The superior court denied the motion.

Presiding Judge Richard Savell had previously issued a standing order in January 1991, pursuant to Alaska Civil Rule 35 and AS 25.20.050(e), ordering the mother, child and putative father to submit to blood tests in any paternity action in which the State is a party and the putative father has denied paternity. In August 1992, a copy of this order was served on Grober along with the summons and complaint. Grober filed a motion to stay blood testing, arguing that the standing order violated his constitutional rights by permitting searches and seizures without a finding of probable cause, and that the testing should be stayed until after the motion to dismiss had been decided. Superior Court Judge Mary E. Greene stayed the blood testing for two months to consider the motion to dismiss. Upon denial of the motion to dismiss, Grober was required to submit to blood testing pursuant to the standing order.

Prior to trial, the judge ruled that AS 09.25.051,[1] as amended by Chapter 7, SLA 1995, effective July 11, 1995, applied to the present case. Grober argued that it did not apply because it became effective after the case was filed, and because the legislature

---

1. AS 09.25.051 provides:
 (a) In a civil action or proceeding, evidence of a DNA profile is admissible to prove or disprove any relevant fact if the court finds that the technique underlying the evidence is scientifically valid. The admission of the DNA profile does not require a finding of general acceptance in the relevant scientific community of DNA profile evidence.
 (b) In this section,
 (1) "deoxyribonucleic acid" means the molecules in all cellular forms that contain genetic information in a patterned chemical structure for each individual;
 (2) "DNA profile"
 (A) means an analysis of blood, semen, tissue, or other cells bearing deoxyribonucleic acid resulting in the identification of the individual's patterned chemical structure of genetic information;
 (B) includes statistical population frequency comparisons of the patterned chemical structures described in (A) of this paragraph.

did not include a provision expressly making the bill retroactive. The trial court found that issues regarding admissibility of evidence do not arise until the evidence is proffered, and thus, no issue of retroactivity existed. Alternatively, the trial court found that if an issue of retroactivity did exist, the statute would still apply, since it is procedural and does not affect substantive rights.

The case was tried before the judge. The judge found that the evidence gave rise to a presumption of paternity as set out in AS 25.20.050(d). Grober, therefore, had the burden to rebut the presumption with clear and convincing evidence. The judge found that Grober had not met his burden, and declared that Grober is C.J.W.'s father.

Grober appeals.

## III. *DISCUSSION*

### A. *Does the Statute of Limitations for Paternity Actions Toll During the Child's Minority?*

■ Alaska Statute 09.10.140 provides:

(a) If a person entitled to bring an action mentioned in this chapter is at the time the cause of action accrues ... (1) under the age of majority, ... the time of a disability identified in (1) ... of this subsection is not a part of the time limit for the commencement of the action. Except as provided in (b) of this section, the period within which the action may be brought is not extended in any case longer than two years after the disability ceases.

C.J.W. was under the age of majority when the cause of action arose. Therefore, the statute of limitations tolls during his minority. *See Truesdell v. Halliburton Co.*, 754 P.2d 236, 238 (Alaska 1988) (rejecting the argument that AS 09.10.140 did not apply to an action for which AS 09.10 provided a time limitation; either the action was tolled, or AS 09.10 did not apply and therefore the action would have no time limitation).

Grober makes two arguments to explain why the tolling provision should not apply.[2] First, he argues that C.J.W. is not "authorized to bring a paternity action"; only CSED is authorized. This is incorrect.

■ Alaska Statute 25.20.050 refers to judicial proceedings for the determination of paternity, but does not delimit the plaintiffs in such proceedings. Subsection .050(a) provides in relevant part: "A child born out of wedlock is legitimated and considered the heir of the putative parent when ... (3) the putative parent is judged by a superior court, upon sufficient evidence, to be a parent of the child." Subsection (e) assumes that the State may be a party without implying that the State is the only possible plaintiff, and subsection (f) similarly assumes that CSED may be a party without implying that the agency is the only possible plaintiff.[3] Given that the potential plaintiffs in paternity actions are not delimited by statute, we join those jurisdictions which hold that a child, upon reaching the age of majority, may bring a paternity action, and that prior to the age of majority a parent or guardian ad litem may maintain a paternity action on behalf of a child.[4]

**2.** "A ruling on the appropriate statute of limitations is a question of law," subject to de novo review. *Jenkins v. Daniels*, 751 P.2d 19, 21 (Alaska 1988).

**3.** These subsections provide in relevant part: "(e) On request of a party in an action in which paternity is contested and to which the state is a party, the court shall order ...."; "(f) If the child support enforcement agency is a party in an action in which paternity is contested, the agency shall request...."

**4.** The right has been grounded in paternity and filiation statutes, *see, e.g., J.W.L. by J.L.M. v. A.J.P.*, 682 N.E.2d 519 (Ind.1997) (child); *Palmer v. Mangum*, 338 So.2d 1002 (Miss.1976) (same); *Sutherland v. Hurin*, 185 Mont. 544, 605 P.2d 1133 (1980) (same); *Wright v. Gann*, 27 N.C.App.

45, 217 S.E.2d 761 (1975) (same); *R.K.S. v. S.D.M. by T.Y.*, 882 P.2d 1217 (Wyo.1994) (same); *Wong v. Young*, 80 Cal.App.2d 391, 181 P.2d 741 (1947) (child or guardian ad litem); *Jefferson County Dep't of Soc. Servs. v. D.A.G.*, 199 Colo. 315, 607 P.2d 1004 (1980) (same); *Throndset v. J.R.*, 302 N.W.2d 769 (N.D. 1981)(same); *see also* Uniform Parentage Act § 6; Uniform Act on Paternity § 2, and in common law, *see, e.g., Spada v. Pauley*, 149 Mich. App. 196, 385 N.W.2d 746 (1986) (child); *Craig v. Shea*, 102 Neb. 575, 168 N.W. 135 (1918) (same); *Wynn v. Wynn*, 587 S.W.2d 790 (Tex.Civ. App.1979) (same); *Johnson v. Norman*, 66 Ohio St.2d 186, 421 N.E.2d 124 (1951) (child or guardian); *Kaur v. Singh Chawla*, 11 Wash.App. 362, 522 P.2d 1198 (1974) (child or guardian ad litem). We recognize that some jurisdictions

Further, CSED is not limited to appearing in its own name or that of the State, but may appear on behalf of the child or the child's mother or legal custodian. Thus, AS 25.27.040(a) provides: "The agency may appear on behalf of minor children or their mother or legal custodian or the state and initiate efforts to have the paternity of children born out of wedlock determined by the court."

Grober next argues that C.J.W. was not under a disability due to his minority because CSED could file a paternity action. This court has previously addressed a similar argument. In *Hanson v. Kake Tribal Corp.*, 939 P.2d 1320 (Alaska 1997), Kake argued that the tolling provision does not apply where a minor has a custodian who can bring an action on the minor's behalf. This court stated:

> [Alaska Statute 09.10.140(a) ] applies to minors, even those with guardians. While it is true that a custodian may sue on behalf of a minor, who is in turn not legally able to sue, a similar state of affairs exists for injured minor children. Their parents may sue for them....
>
> ... *It can be regarded as fundamentally unfair to a minor to saddle the minor with the consequences of a custodian's neglect.*

*Id.* at 1326 (emphasis added) (citing *Haakanson v. Wakefield Seafoods, Inc.*, 600 P.2d 1087, 1090–91 (Alaska 1979)). Because a minor for whom CSED neglects to act may suffer the same unfairness as that emphasized in *Hanson,* we hold that the tolling provision applies where CSED can bring an action on behalf of a minor.[5]

Grober would distinguish this case because CSED must take an action to establish paternity. AS 25.27.020(a)(11) ("The agency shall

... establish ... through court action, the paternity of a child."). However, the *Hanson* rule is designed to protect children from the consequences of the negligence of those entitled to take the action on their behalf. Such individuals may negligently fail to file an action, even where they are under a duty to do so. A rule that tolls the limitations period if the custodian is entitled to take the action, but does not toll the cause of action where the custodian has a duty to take the action, does not protect the minor from the "consequences of a custodian's neglect."

### B. *Did the Standing Order Requiring Grober to Submit to Blood Tests Violate His Constitutional Rights?*

Grober argues that the standing order requiring putative fathers to submit to blood tests in any action where the State is a party and the putative father denies paternity is unconstitutional.[6] We agree. However, the use of the standing order in this case was harmless; Grober's rights were not violated.

#### 1. *The standing order violates a putative father's due process rights.*

Civil Rule 35 permits the court to order a party to submit to a physical or mental examination, including a blood test, if the mental or physical condition of the party is "in controversy" and there is "good cause shown." An order may only be entered upon motion and "upon notice to the person to be examined and to all parties." Alaska R. Civ. P. 35. The United States Supreme Court has found the federal counterpart to Civil Rule 35 to be "free of constitutional difficult[ies]," even when applied to defendants. *Schlagenhauf v. Holder,* 379 U.S. 104, 114, 85 S.Ct. 234, 240, 13 L.Ed.2d 152 (1964).

---

have held that the child does not have the right to establish paternity. *See, e.g., J.M.S. v. Benson,* 98 Wis.2d 406, 297 N.W.2d 18 (1980) (holding that mother must bring complaint to district attorney, who has sole discretion as to whether to proceed); *Cessna v. Montgomery,* 63 Ill.2d 71, 344 N.E.2d 447 (1976) (mother only); *Thompson v. Thompson,* 285 Md. 488, 404 A.2d 269 (1979) (same).

**5.** Grober argues that CSED had notice of C.J.W.'s "illegitimacy shortly after his birth," and therefore C.J.W. was not under a disability.

However, the case law does not distinguish between custodians who are aware that there is a cause of action and those who are not. *See Hanson,* 939 P.2d at 1325–26. The rule is designed to protect children from the negligence of those who could take the action for them; it is not a modified version of the discovery rule.

**6.** We apply our independent judgment to questions of constitutional law. *Snyder v. State,* 930 P.2d 1274, 1277 n. 1 (Alaska 1996).

■ The standing order was entered pursuant to Civil Rule 35 and AS 25.20.050. However, it does not meet the requirements of Civil Rule 35. There was no motion, no notice to Grober, and no determination that the matter was both "in controversy" and with "good cause."

These deficiencies violate both the federal and state constitutions. In *Etheredge v. Bradley*, 502 P.2d 146, 151–153 (Alaska 1972), we held that summary property attachment pursuant to Civil Rule 89 violated article I, section 7 of the Alaska Constitution and the due process clause of the Fourteenth Amendment of the Federal Constitution. Procedural due process requires that, before a party can be deprived of a property right which is not de minimis, he must be given notice and a hearing held at a meaningful time, defined as a time when deprivation can still be prevented. *Id.*

An intrusive procedure such as blood testing requires no less.[7] Before a blood test may be ordered, there must be notice to the party and an opportunity to be heard. The party seeking the order must make a showing that there is reasonable cause to order the testing. *See Schlagenhauf,* 379 U.S. at 119–21, 85 S.Ct. at 243–44. The opposing party must be afforded an opportunity to challenge the motion. If, after the opposing party has responded, his physical or mental condition is still in controversy and there is reasonable cause to order the testing, the test may be ordered.

A hearing will not always be required. A plaintiff who seeks redress for personal injury places her physical condition in controversy and provides good cause to enter an order. *Sibbach v. Wilson & Co.,* 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941). A defendant who affirmatively "asserts his mental or physical condition as a defense to a claim, such as, for example, where insanity is asserted as a defense to a divorce action," is likewise subject to an examination under Civil Rule 35 based upon the pleadings alone. *Schlagenhauf,* 379 U.S. at 119, 85 S.Ct. at 243.

Neither of these exceptions is present in the instant case. Grober denied paternity, but did not affirmatively raise a defense which placed his physical condition in controversy.[8]

### 2. *The reliance on the standing order was harmless.*

■ Grober's due process rights were not violated by the superior court's reliance on the standing order. D.W.'s affidavit stating that Grober is C.J.W.'s father constituted a showing of reasonable cause to order the blood testing. Grober successfully obtained a stay of the blood testing while the superior

---

7. To determine what "due process" is required, "[t]he conflicting interests must ... be balanced to determine whether or not those interests supporting the contested procedures outweigh those opposed." *Etheredge,* 502 P.2d at 155 (Boney, C.J., dissenting). In a paternity action, there is no threat that the defendant, upon receiving notice, will destroy evidence, thereby requiring a procedure which orders testing without notice to the defendant. *See id.* at 152 (distinguishing *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), on the basis that a defendant cannot alienate future wages, but can drain his checking account). The balance tips in favor of the putative father; the State has no interest which would be harmed by giving notice to the defendant, and the defendant has a strong interest in preventing an unjustifiable intrusion into his privacy.

8. Grober also argues that the order violated his Fourth Amendment right to be free from unreasonable searches and seizures. In *Schmerber v. California,* 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966), police officers required a person charged with driving under the influence to submit to a blood alcohol test over his objection. The Court "recognized '[t]he security of one's privacy against arbitrary intrusion by the police' as being 'at the core of the Fourth Amendment.'" *Id.* In the present case, the blood test was part of civil discovery. Therefore, the judge did not need to determine that "probable cause" or "individualized suspicion" existed, as those are standards required to constrain police activity. *See Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 624, 109 S.Ct. 1402, 1417, 103 L.Ed.2d 639 (1989); *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); *United States v. Martinez–Fuerte,* 428 U.S. 543, 560–61, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976). Properly executed civil discovery will generally comport with the "reasonableness" requirement of the Fourth Amendment. The order for blood testing in this case was reasonable; D.W. offered her sworn statement that Grober is C.J.W.'s father, and the test was stayed until after the court decided Grober's motion to dismiss.

court considered his motion to dismiss. The motion was denied. Grober's evidence did not defeat D.W.'s showing of reasonable cause. After denying the motion to dismiss, the court did not enter a "new" order for blood testing, because the standing order was still in effect. The constitutional standard was satisfied.

### C. Does AS 09.25.051 Apply to Paternity Actions Filed before Its Effective Date?

We have held that scientific evidence cannot be admitted without a showing that it is "generally accepted in the scientific community." *See Contreras v. State,* 718 P.2d 129 (Alaska 1986). Alaska Statute 09.25.051 eliminated this requirement for DNA evidence, requiring only that it be "scientifically valid." This change became effective after the present case was filed, but before it went to trial. The trial court found that the statute was applicable to this case because it affected only procedural matters.

■■■ "Procedural changes in the law which do not affect substantive rights may be applied retroactively." *Rice v. Rice,* 757 P.2d 60, 61 (Alaska 1988). Alaska Statute 09.25.051 effects only a procedural change. *Id.; Matanuska Maid, Inc. v. State,* 620 P.2d 182, 187 (Alaska 1980). Grober's argument that the statute increases his liability may be correct in the sense that any change in any rule has the potential to change the result in litigation. The change is not a prohibited retroactive change, however, unless it changes the norms governing out-of-court conduct. *See Landgraf v. USI Film Prod.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). As it clearly does not do so, the court did not err in applying the current statute.

### D. The Trial Court Did Not Err by Adopting the Scientific Evidence Presented by CSED.

■■■ Both experts agree that the procedures used in DNA testing are generally accepted in the scientific community. The

defendant's expert "agreed he could find nothing to criticize in the laboratory's performance" of the testing procedures. The experts disagreed as to the correct paternity indices and probability of paternity. Having reviewed the transcripts, exhibits and briefs, we conclude that the trial court did not err in its conclusion that the evidence was sufficient to give rise to a presumption of paternity.[9] This conclusion is supported by Dr. Cutter's testimony and is not clearly erroneous.

Grober argues that the court erred in adopting the State's scientific evidence because he is an Ashkenazic Jew and therefore the paternity index should not have been based on frequencies for North American Caucasians in general. He argues that the paternity analysis conducted in this case failed to compare his genetic markers solely to those of the Ashkenazic Jews. Dr. Cutter testified that population substructuring is not statistically significant for the locus tested, and is not statistically significant if numerous loci are tested. This is consistent with the academic material presented to the trial judge. However, the judge reduced the calculations by one and two orders of magnitude in reaching her conclusion. Grober's evidence directly supports the conclusion that there will be no greater margin of error than two orders of magnitude.

The court discarded the paternity indices for the locus which Grober's expert stated was inconclusive. This was not error. Dr. Cutter testified that one mismatch would not exclude paternity, and that it was accepted practice in paternity testing to require two mismatches to find an exclusion. Dr. Frelinger was not familiar with the protocols concerning how many mismatches are required before an exclusion is declared. Thus, even accepting Dr. Frelinger's testimony that the results of one locus were inconclusive, this does not establish an exclusion of paternity. Dr. Cutter also testified why it was not inconclusive.

Grober's remaining arguments are unpersuasive. We conclude that the trial court did

---

**9.** This court applies a clearly erroneous standard of review when reviewing findings of fact and defers to the trial court's determination of credibility. Alaska R. Civ. P. 52(a); *Wasserman v.* *Bartholomew,* 923 P.2d 806, 817 n. 29 (Alaska 1996); *Lee v. Cox,* 790 P.2d 1359, 1367 (Alaska 1990).

not err in its calculation of the probability of paternity based on the scientific evidence presented.

### E. Did the Trial Court Err in Its Evaluation of the Evidence?

Grober believes that the trial court erred when it found that the prior probability of paternity, without reference to the scientific evidence, was forty percent. He argues that if the prior probability was zero or ten percent, then the appropriate equation (using his expert's interpretation of the blood testing) would produce a probability of paternity of only 91.74 percent. This would be insufficient to raise a presumption of paternity.

 This argument fails. The judge found that it was more likely than not that D.W. and Grober had unprotected sexual intercourse around the time of conception. The evidence concerning whether D.W. and Grober had sexual intercourse was in conflict.[10] We defer to the trial court's determination of credibility. Alaska R. Civ. P. 52(a); *Wasserman v. Bartholomew*, 923 P.2d 806, 817 n. 29 (Alaska 1996).

Had D.W. engaged in intercourse with only Grober, the prior probability of paternity would be one hundred percent. The judge held that the prior probability of paternity was forty percent, because D.W. was dating another man at the same time. If this is error, it benefits Grober. If D.W. in fact had intercourse with both men around the time of conception, it would be equally likely that either of the men is C.J.W.'s father, producing a prior probability of fifty percent that Grober is C.J.W.'s father.

Next, Grober argues that the court incorrectly determined that he did not produce clear and convincing evidence that he is not C.J.W.'s father. Having reviewed the record, we do not believe that this finding is clearly erroneous.

Grober's remaining argument that CSED did not have standing to bring this action is meritless. CSED does not need to plead that the action is in the child's best interest, nor does it need to seek a support order in a paternity action. *See* AS 25.27.040.

### IV. CONCLUSION

We AFFIRM the judgment below.

---

10. Grober presented the testimony of Ms. Riley. Riley is the wife of the client Grober worked for during the period of conception. Her testimony indicated that she did not believe that Grober went to Anchorage in May 1981. Grober argues that the trial court erred by not believing this testimony and by holding that Grober engaged in sexual intercourse with D.W. in Anchorage in May 1981. The trial judge was not clearly erroneous in finding that it was unlikely that Riley could accurately remember if her husband's lawyer traveled to Anchorage fourteen years earlier.