v.

STATE of Alaska, Appellee.

No. A–3013.

Court of Appeals of Alaska.

April 13, 1990.

---

Blair McCune, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Teresa Williams, Asst. Atty. Gen., Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

1. K.L.F. objected to the master's detention recommendation and requested expedited review by a superior court judge. After reviewing the record of proceedings, Judge Michalski preliminarily approved the master's recommendation but granted leave for K.L.F. to present additional evidence. A second hearing was conducted before Master McBurney, who reaffirmed her earlier recommendation that K.L.F. be detained pending disposition. Upon renewed objections by K.L.F. and a further request for expedited review, Judge Michalski formally approved the master's recommendation by an order signed April 23, 1989. In the meanwhile, however, K.L.F.'s disposition hearing had already been held, and she had been released from state custody to the care of her father in California.

Although the issue of predisposition detention was already moot, K.L.F. elected to proceed with this appeal. On appeal, K.L.F. and the state have stipulated that this case falls within an exception to the mootness rule because it presents a potentially recurring issue which would be capable of evading review if an exception to the mootness doctrine were not recognized. *See In re G.M.B.*, 483 P.2d 1006, 1008 (Alaska 1971). Despite K.L.F.'s best efforts, the superior court was unable to make a final deci-

## OPINION

BRYNER, Chief Judge.

 In 1988, K.L.F., then fifteen years old, was adjudicated delinquent for shoplifting and stealing her mother's car. She was released on probation to the custody of the state. On December 2, 1988, K.L.F. violated the conditions of her probation by running away from the Booth Home, a group home in which she was residing. She was arrested on March 11, 1989, and at a hearing on March 13, she admitted violating the conditions of her probation. Standing Master Lucinda McBurney recommended that K.L.F. be detained pending her disposition hearing. Superior Court Judge Peter A. Michalski approved Master McBurney's recommendation.[1] K.L.F. appeals, contending that the court erred in detaining her pending disposition. We affirm.

In challenging the superior court's decision to detain her pending a disposition hearing, K.L.F. relies primarily on the Institute of Judicial Administration—American Bar Association, Juvenile Justice Standards, *Standards Relating to Interim Status*, section 6.6 (1982).[2] This standard nar-

sion on the issue of K.L.F.'s predisposition custody prior to her disposition hearing. For this reason, we agree that the issue in this case appears to be one that would be capable of evading review if the mootness doctrine were strictly applied. We take this occasion, however, to emphasize that, under ordinary circumstances, the appropriate procedural course for challenging a predisposition detention order is an expedited appeal. *See A.M. v. State*, 653 P.2d 346, 349 (Alaska App.1982).

2. Section 6.6, Guidelines for status decision, provides:
A. Mandatory release. The intake official should release the accused juvenile unless the juvenile:
1. is charged with a crime of violence which in the case of an adult would be punishable by a sentence of one year or more, and which if proven is likely to result in commitment to a security institution, *and* one or more of the following additional factors is present:
    a. the crime charged is a class one juvenile offense;
    b. the juvenile is an escapee from an institution or other placement facility to which he or she was sentenced under a previous adjudication of criminal conduct; or

rowly circumscribes the circumstances under which a child who has been accused of delinquency may be detained in custody pending disposition of the charges. Under section 6.6A, two prerequisites must be met before predisposition detention is possible. First, the child must be accused of a crime of violence that would be punishable by a year or more of imprisonment if committed by an adult. Second, even when a crime of violence has been charged, detention may be ordered only if: the specific charge falls within the most serious class of juvenile offenses defined in the IJA–ABA Standards; the child has escaped from an institution following sentencing on a prior adjudication; or the child has a recent record of willful failure to appear for court.

K.L.F. argues that under this standard she could not properly be subjected to detention in a closed facility prior to her adjudication hearing. She points out that the original offenses for which she was adjudicated a delinquent were not serious crimes of violence but only minor thefts. Her current arrest, moreover, was not for a new offense but was only for violating the conditions of her probation by running away from the group home in which she had been placed. K.L.F. further notes that, in ordering her detention, the court did not find her to be a danger to herself or others but relied solely on the finding that her detention was necessary to assure her appearance in court. K.L.F. emphasizes that she has never willfully failed to appear in court. Because the IJA–ABA Standards do not permit predisposition detention under these circumstances, K.L.F. reasons that the superior court erred in ordering her to be detained.

K.L.F. acknowledges that predisposition detention is addressed in Alaska Delinquency Rule 12, but she urges us to look to the IJA–ABA Standards for "guidance" in interpreting and applying Rule 12. K.L.F. cites previous delinquency cases in which we have looked to the IJA–ABA Standards for guidance. *See, e.g., J.H. v. State*, 758 P.2d 1287 (Alaska App.1988); *R.P. v. State*, 718 P.2d 168 (Alaska App.1986). K.L.F. also cites previous Alaska Supreme Court cases which make it clear that children should not be detained prior to disposition in delinquency proceedings except as a last resort. *See, e.g., Doe v. State*, 487 P.2d 47, 53 (Alaska 1971).

In our view, however, Alaska Delinquency Rule 12(b) spells out the requisite stan-

c. the juvenile has a demonstrable recent record of willful failure to appear at juvenile proceedings, on the basis of which the official finds that no measure short of detention can be imposed to reasonably ensure appearance; or

2. has been verified to be a fugitive from another jurisdiction, an official of which has formally requested that the juvenile be placed in detention.

B. Mandatory detention. A juvenile who is excluded from mandatory release under subsection A. should not, *pro tanto*, be automatically detained. No category of alleged conduct in and of itself may justify a failure to exercise discretion to release.

C. Discretionary situations.

1. Release vs. detention. In every situation in which the release of an arrested juvenile is not mandatory, the intake official should first consider and determine whether the juvenile qualifies for an available diversion program, or whether any form of control short of detention is available to reasonably reduce the risk of flight or misconduct. If no such measure will suffice, the official should explicitly state in writing the reasons for rejecting each of these forms of release.

2. Unconditional vs. conditional or supervised release. In order to minimize the imposition of release conditions on persons who would appear in court without them, and present no substantial risk in the interim, each jurisdiction should develop guidelines for the use of various forms of release based upon the resources and programs available, and analysis of the effectiveness of each form of release.

3. Secure vs. nonsecure detention. Whenver an intake official determines that detention is the appropriate interim status, secure detention may be selected only if clear and convincing evidence indicates the probability of serious physical injury to others, or serious probability of flight to avoid appearance in court. Absent such evidence, the accused should be placed in an appropriate form of nonsecure detention, with a foster home to be preferred over other alternatives.

*Quoted in* B. Flicker, *Standards for Juvenile Justice: A Summary and Analysis* 201 (Institute of Judicial Administration, American Bar Association 2d ed. 1982).

dard for predisposition detention-decisions and K.L.F.'s reliance on the IJA–ABA Standards is mistaken. Delinquency Rule 12(b) provides:

> (b) *Detention or Placement after Hearing.* A juvenile may not be detained or placed outside the home of a parent or guardian unless the court makes the following findings:
>
> > (1) that probable cause exists to believe that either (a) the juvenile has committed a delinquent act as alleged in a petition, or (b) after such a probable cause finding has been made at a prior hearing, the juvenile has violated a release condition or probation condition imposed by the court; and
> >
> > (2) that detention or placement outside the home of a parent or guardian is necessary either (a) to protect the juvenile or others, or (b) to ensure the juvenile's appearance at subsequent court hearings. The court may not order detention unless there is no less restrictive alternative which would protect the juvenile and the public or ensure the juvenile's appearance at subsequent hearings.

In prior cases, when Alaska statutes or rules have spoken only in general terms and offered little specific guidance, we have readily turned to the IJA–ABA Standards to define the proper scope of the trial court's discretion. In the present case, however, Delinquency Rule 12(b) articulates a specific and unambiguous standard for determining whether a child may properly be detained pending a disposition hearing in a delinquency case. The rule does not incorporate the rigid prerequisites of the IJA–ABA Standards.

The plain language of the rule empowers the superior court to detain a child upon making three predicate findings. First, under Rule 12(b)(1), the court must find probable cause to believe that the child has committed a delinquent act or violated the conditions of probation. Second, under Rule 12(b)(2), the court must find it necessary to place the child outside the home to protect the child or others, or to ensure the child's appearance in court. Third, under the same subsection, if placement outside the home is necessary, actual detention may be ordered only if the court finds that no less restrictive alternative exists.

The plain meaning of Delinquency Rule 12(b) allows little room for interpretation and creates little need to seek guidance in the IJA–ABA Standards. Although we are not inexorably bound by the plain meaning of a rule or statute in all cases, we may depart from plain meaning only to implement the original legislative intent. *See Alaska Public Employees Association v. Fairbanks,* 753 P.2d 725, 727 (Alaska 1988); *State v. Alex,* 646 P.2d 203, 208–09 n. 4 (Alaska 1982); *North Slope Borough v. Sohio Petroleum,* 585 P.2d 534, 540 n. 7 (Alaska 1978). A party arguing for adoption of a meaning other than the plain meaning of a statute or rule bears the burden of establishing legislative history that supports departure from the plain meaning. *University of Alaska v. Geistauts,* 666 P.2d 424, 428 n. 5 (Alaska 1983); *Helton v. State,* 778 P.2d 1156, 1158–59 (Alaska App.1989).

Here, K.L.F. has offered nothing to suggest that the drafters of Delinquency Rule 12(b) or the supreme court, in adopting the rule, intended it to be subjected to any restrictive interpretation or gloss. Indeed, the contrary would appear to be the case. Alaska's Delinquency Rules were adopted in 1987, *see* Supreme Court Order 845 (effective August 15, 1987), well after the IJA–ABA Standards had been published. Given the recognition frequently accorded the IJA–ABA Standards by the Alaska Supreme Court and this court, there is every reason to believe that the drafters of the Delinquency Rules were fully aware of the provisions of the Standards. To the extent that the drafters elected to adopt a rule that is broader and more flexible in its approach to predisposition detention than the narrow and restrictive standard adopted by the IJA–ABA, the fair inference would seem to be that the drafters of the Delinquency Rules opted not to follow the standards.

Under the circumstances, we conclude that the specificity and the lack of ambi-

guity in Delinquency Rule 12(b), coupled with the absence of any legislative history indicating that the rule was intended to have a meaning other than that plainly suggested on its face, foreclose the adoption of the more restrictive criteria for predisposition detention specified in the IJA–ABA Standards.

■ It remains to be considered whether the superior court complied with the requirements of Delinquency Rule 12(b) in ordering K.L.F.'s detention. Because K.L.F. admitted that she violated the requirements of her probation by departing from the Booth Home, the probable cause requirement of Rule 12(b)(1) was certainly satisfied in this case. Furthermore, since K.L.F. had already been adjudicated a delinquent and the court had previously found a need to place her outside the parental home, the first prong of Delinquency Rule 12(b)(2) was satisfied.

The only significant dispute in this case is whether Master McBurney erred in concluding that no alternative placement less restrictive than detention could assure K.L.F.'s appearance for future court proceedings. In our view, there was ample evidence to support the master's finding on this issue.

While on release or probation during the year prior to her detention, K.L.F. had run away from court-ordered placements at least five times. The state had attempted to place K.L.F. in a variety of settings, including the Laurel Street Shelter, two foster homes, and the Booth Home. K.L.F. had run away from each placement at least once and had never returned to state custody voluntarily. Following her most recent departure from the Booth Home, K.L.F. remained at large for more than three months and ignored repeated requests by friends, family members, and counselors to turn herself in.

The only specific placement suggested to the court by K.L.F.'s counsel as an alternative to detention was the Laurel Street Shelter. Yet K.L.F. had already run away from the shelter on a prior occasion. While officials at the shelter expressed a willingness to accept K.L.F. pending disposition, they could provide no assurance that she would remain there. Under the circumstances, Master McBurney was understandably skeptical of K.L.F.'s assurances that, this time, she would be willing to remain.

In short, the standing master expressly found detention of K.L.F. to be the only available means of ensuring her appearance for the disposition hearing. The finding was expressly approved following careful review by Judge Michalski and is supported by abundant evidence. We conclude that the court did not err in deciding that no less restrictive alternative to detention was available in this case.

In reaching this conclusion, we are not unmindful of the fact that K.L.F.'s original offenses were relatively minor and probably would not have warranted any significant period of incarceration had she been treated as an adult. We are also not unmindful that detention of children for nondelinquent behavior such as running away is impermissible. Certainly, we must be alert to guard against the inappropriate use of delinquency proceedings as an expedient for dealing with children whose primary difficulty is a lack of willingness to accept parental supervision. Nevertheless, K.L.F. has alleged no history of abuse of delinquency procedures in cases like hers, and we are aware of none. Although the record in this case does provide some indication that K.L.F.'s primary difficulty was not her delinquency but her runaway behavior, nothing in the record justifies the conclusion that delinquency proceedings were resorted to as a subterfuge to manage her difficult behavior. Despite the relatively minor nature of K.L.F.'s original offenses, we find insufficient basis for concluding that the superior court erred in ordering her detained pending disposition.[3]

The detention order is AFFIRMED.

---

**3.** As a separate point on appeal, K.L.F. also takes issue with certain remarks addressed to

her by Standing Master McBurney. K.L.F. argues that the challenged remarks were inappropriate for a judicial officer conducting a court proceeding. This court does not have general supervisory powers over superior court masters and has no authority to determine the appropri-

ateness of judicial conduct except to the extent that it results in legal error. Supervision over magistrates and masters is a function of presiding superior court judges. Accordingly, we decline to rule on this issue.