*v.*

**STATE of Alaska, Respondent.**

**No. S–3923.**

Supreme Court of Alaska.

Nov. 15, 1991.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

**ORDER**

An order was issued on August 2, 1990, granting the petition for hearing on behalf of K.L.F.,

IT IS ORDERED:

1. The order of August 2, 1990, is VACATED as improvidently granted.

2. The petition for hearing is DENIED.

COMPTON, J., dissents for the reasons stated in the attached opinion.

COMPTON, Justice, dissenting.

1. *Facts and Proceedings.*

K.L.F. came to the attention of juvenile authorities for shoplifting a "T" shirt from J.C. Penney's and taking her mother's car without permission. Adjudged delinquent, she was placed in the Laurel Street Shelter,

---

from which she ran. She again took her mother's car without permission, following which she was placed on probation and in the care of foster parents. A second foster placement, from which K.L.F. ran, was followed by placement at Booth Memorial Home, from which she also ran. These events took place between February and December 1988. She was arrested in March 1989 and "detained" at McLaughlin Youth Center.

When arrested, K.L.F. had been absent from her most recent designated placement for three months. During that time she had lived with a girl friend at the friend's parents' "condo", with her mother off and on, and in an apartment she rented. She earned money by babysitting and later by working at a cafe. She had contacted her father in California a couple of times, as well as a DFYS counsellor. She had been urged to turn herself in, but had refused. However, in the state's own words, "she never failed to appear at a court hearing."

Following her arrest, K.L.F. was detained at McLaughlin Youth Center, where she had been detained on prior occasions. K.L.F. sought release to a residential placement. The Laurel Street Shelter, from which K.L.F. had run 13 months earlier, interviewed her and agreed to take her in for the three weeks remaining until her scheduled disposition hearing. This was denied by Master Lucinda McBurney. Following a second hearing before Master McBurney, her request was again denied, and she was ordered detained at McLaughlin until the disposition hearing was held.

K.L.F. then sought review by a superior court judge. This was unavailing,[1] and the master's decision was upheld. The court of appeals affirmed. *K.L.F. v. State*, 790 P.2d 708 (Alaska App.1990).

This court granted K.L.F.'s petition for hearing, Appellate Rule 304, but as is the court's practice, did not specify under which subsection of the rule the petition

was granted. Having heard oral argument, the court now has decided to dismiss the petition as "improvidently granted." Not knowing with specificity why the petition was granted, no paper trail will lead us to the answer why the petition is being dismissed. The net result is that the decision of the court of appeals stands as the most recent pronouncement regarding detention of juveniles. Since I believe that decision is inconsistent with *Doe v. State*, 487 P.2d 47 (Alaska 1971), Delinquency Rule 12(b), and its own cautionary admonition, I must conclude that this court is limiting *Doe* and amending Disciplinary Rule 12 without having to justify its decision. Therefore I dissent.

2. *Discussion.*

AS 47.10.140(d) provides:

If the court finds that probable cause exists, it shall determine whether the minor should be detained pending the hearing on the petition or released to the custody of a suitable person pending the hearing on the petition. If the court finds no probable cause, it shall order the minor released and close the case.

This language was adopted in 1962 and has remained unchanged to date. Ch. 118, § 3 SLA 1962.

*Doe v. State*, 487 P.2d 47 (Alaska 1971), judicially limited the circumstances under which a juvenile may be detained. The court noted that "the adult bail system would be practically unsuitable as a device for securing the child's future appearance before the court," but that "the existence of these problems does not mean that the right to remain free pending an adjudication proceeding should be denied to children." *Id.* at 52. The court went on to say:

Thus we are faced with conflicting interests. A child who is charged under the children's rules with an act which would be a crime, if committed by an adult, should have no less right to pre-adjudica-

---

1. The superior court did not enter any written findings and conclusions, either when it overruled K.L.F.'s objections to the detention order or when it denied reconsideration on the merits of K.L.F.'s motion. By the time the superior

court refused finally to release K.L.F. from temporary detention, she already had been released permanently to her father in California, and proceedings in Alaska dismissed.

tion freedom than an adult criminal defendant has pending trial. On the other hand, a child is in need of some care and supervision. If his parents are not willing to care for the child or if harm will come to the child in his present situation, the children's court should not allow the child to return or remain at home; yet the child cannot be released entirely on his own responsibility. While these are serious conflicts, we believe they can be reconciled.

We hold that a child has the right to remain free pending an adjudication that the child is delinquent, dependent, or in need of supervision, where the facts supporting the petition involve an act which, if committed by an adult, would be a crime, and where the court has been given reasonable assurances that the child will appear at future court proceedings. If the facts produced at the inquiry show that the child cannot return or remain home, every effort must be made to place the child in a situation where his freedom will not be curtailed. Only if there is clearly no alternative available may the child be committed to a detention facility and deprived of his freedom.

*Id.* at 52–53.

Delinquency Rule 12, adopted in 1987, further delineates the circumstances under which a juvenile may be detained. Subsection (b), which addresses detention or placement after hearing, provides:

A juvenile may not be detained or placed outside the home of a parent or guardian unless the court makes the following findings:

(1) that probable cause exists to believe that either (a) the juvenile has committed a delinquent act as alleged in a petition, or (b) after such a probable cause finding has been made at a prior hearing, the juvenile has violated a release condition or probation condition imposed by the court; and

(2) that detention or placement outside the home of a parent or guardian is necessary either (a) to protect the juvenile or others, or (b) to ensure the juvenile's appearance at subsequent court hearings. The court may not order detention unless there is no less restrictive alternative which would protect the juvenile and the public or ensure the juvenile's appearance at subsequent hearings.

K.L.F. does not contend that subsection (1) of Rule 12(b) was not met in her case since she admitted violating her probation. The *state* does not contend that detention was necessary to protect K.L.F. or others.[2] Rule 12(b)(2). Therefore in order to detain K.L.F., the court was required to make, or approve a master's finding, that detention was necessary to ensure her appearance at subsequent court hearings, and that there were no less restrictive alternatives which would assure her appearance.

At the time of the March hearings, it had already been concluded tentatively that K.L.F. would be placed with her father in California following the April hearing, and proceedings in Alaska would be terminated. Her father testified telephonically at the hearing:

Well I'm sure you know my full intention is to get her down here but if it has to wait until the next court hearing then I would prefer she would go to like a—I guess, what is it, a minimum security place. I'm not too happy about her being in McLaughlin. I just want to make it as easy on her as possible until we can decide what is going to be done.

Furthermore, the Laurel Street Shelter in which K.L.F. had been placed a year prior to this hearing had reevaluated her and had agreed to take her back for the three weeks remaining until her disposition hearing. These alternatives receive scant to no analysis by the hearing master.

---

**2.** The ORDER FOR TEMPORARY DETENTION OR PLACEMENT entered on March 13 did have an "x" in the box designated "To protect the juvenile or others." However, that box was not checked on the March 23 order, and at the hearing that day, state's counsel disclaimed expressly any intention to rely on that provision of Rule 12(b)(2): "It's not that the state considers [K.L.F.] a danger to herself or others in society...."

The hearing master's order, approved by the superior court, directed that K.L.F. be detained to ensure her appearance at the scheduled disposition hearing, based on a finding that K.L.F. had a history of running behavior and therefore was an appearance risk. The hearing master's oral decision, a transcript of which is appended, provides the only basis for evaluation of the correctness of that decision.

In affirming the superior court, *K.L.F. v. State*, 790 P.2d 708 (Alaska App.1990), the court of appeals concludes that there was ample evidence to support the master's finding that no alternative placement less restrictive than detention could assure K.L.F.'s appearance for future court proceedings. (In a literal sense this is true, since it is never possible to assure any child's (or adult's) appearance at a hearing unless placed in a secure facility.) The court cites the undisputed evidence that K.L.F. had run away from prior designated placements, and the fact that she had run away from the Laurel Street Shelter previously, to support its conclusion. It does not mention the placement that is suggested by her father's remarks, *i.e.* that K.L.F. be sent to him at that time rather than wait until after the scheduled hearing, or that the master apparently gave no consideration to that alternative.

The court of appeals does conclude its opinion with a cautionary admonition:

[W]e are not unmindful of the fact that K.L.F.'s original offenses were relatively minor and probably would not have warranted any significant period of incarceration had she been treated as an adult. We are also not unmindful that detention of children for non-delinquent behavior such as running away is impermissible. Certainly, we must be alert to guard against the inappropriate use of delinquency proceedings as an expedient for dealing with children whose primary difficulty is a lack of willingness to accept parental supervision. Nevertheless, K.L.F. has alleged no history of abuse of delinquency procedures in cases like

hers, and we are aware of none. Although the record in this case does provide some indications that K.L.F.'s primary difficulty was not her delinquency but her runaway behavior, nothing in the record justifies the conclusion that delinquency proceedings were resorted to as a subterfuge to manage her difficult behavior. Despite the relatively minor nature of K.L.F.'s original offenses, we find insufficient basis for concluding that the superior court erred in ordering her detained pending disposition.

790 P.2d at 712 (footnote omitted).

A. The court of appeals cautionary admonition.

The court of appeals remarks that detention of children for non-delinquent behavior such as running away is impermissible. Although K.L.F.'s initial misbehavior was for delinquent conduct—a "T" shirt from J.C. Penney's and twice taking her mother's car without her mother's permission— her misbehavior on this occasion was for running away. The court of appeals either does not mean what it says, or cannot apply what it says to the undisputed facts. In either event, it has condoned precisely what it says is impermissible. The conclusion that must follow is that a child may be detained for non-delinquent behavior.

B. Less restrictive alternatives.

Shortly after K.L.F.'s initial delinquent behavior, she was placed briefly at the Laurel Street Shelter. She ran from there a few days later, and for the next nine months was placed in and ran from various facilities, although she violated no laws during that time. When last arrested and detained at McLaughlin, again Laurel Street was considered for placement. Laurel Street staff reevaluated K.L.F. and agreed to take her for the remaining three weeks. The master's entire analysis of placement at Laurel Street was that "I [Master McBurney] think if I released you to the shelter you'd be gone in a minute and you'd be back to doing whatever you were doing before." [3]

3. What K.L.F. was doing before was renting an apartment with money she obtained from work-

As is apparent from K.L.F.'s father's remarks, he wanted to get custody of her and bring her to his home in California. He did not want her placed at McLaughlin, if placement with him had to wait until the next hearing. Furthermore, on its face Alaska Detention Rule 3 would not have required K.L.F. or her father to return to Alaska for the disposition hearing. The master's reference to this alternative is succinct: "And if you expect to be released to any community setting, for instance, your father, you better have a better detention summary than this because this is not going to get you out of anywhere."

As previously noted, in *Doe* we held that "[o]nly if there is clearly no alternative available may the child be committed to a detention facility and deprived of his freedom." *Doe*, 487 P.2d at 53. This rule, commonly known as the least restrictive alternative rule, was followed by the court of appeals as recently as the case of *In The Matter of J.H.*, 758 P.2d 1287 (Alaska App. 1988). In *J.H.*, a case in which the facts supporting institutionalization are far more compelling that those in K.L.H.'s circumstances, an order institutionalizing J.H. was disapproved, the court noting the "strong presumption against institutionalization [that] attaches in all but extreme cases." *Id.* at 1291. The court further noted that whether a disposition constitutes the least restrictive alternative is a question of law, not of fact. *Id.* This appears to have been forsaken in *K.L.F.*

Other than the master's apparent conclusion that if a child runs from placements, the child will not appear at hearings unless the child is institutionalized, there is no analysis of less restrictive alternatives. This methodology is approved by the court of appeals, thereby insulating the question from meaningful review. Bereft of analysis and incapable of meaningful review, the master's or superior court's decision becomes the final word. Whether there is a less restrictive alternative thus becomes a matter of no consequence.

### C. Ensuring the juvenile's appearance.

The state argues that K.L.F.'s running from placements justifies detention until her disposition hearing, the inference being that a child who runs from placements will not appear at a scheduled hearing. The state admits that K.L.F. has never failed to appear at a hearing, though it is obvious that she was in custody when some hearings were held. The master readily accepted the argument.

There are two problems with the argument. The first is that the master's oral decision focuses entirely on K.L.F.'s running behavior. It is because of her running behavior that the master concludes that K.L.F. cannot be trusted, and because she cannot be trusted, that she will not be at her disposition hearing unless detained. The tenor of the decision is punitive. It is not until the end of the master's remarks that a relationship between K.L.F.'s running behavior and possible failure to appear is even mentioned.

Even if K.L.F. were not being punished for running, the relationship between running and possible failure to appear is highly attenuated in this case. The state offered no evidence that children whose "primary difficulty [is] ... runaway behavior" are so unlikely to voluntarily appear at scheduled hearings that they must be detained. And even if the master were to draw on her experience to stack her inferences, she also would have had to acknowledge K.L.F.'s apparently uncontradicted self sufficiency, her avoidance of violations of the law during the year she had been on probation, her contact with her parents and counsellors, and other factors which may be atypical of otherwise similarly inclined children. The master does not engage in any such analysis.

### 4. Conclusion.

The facts of this case, particularly when compared to those presented in *J.H.*, suggest a significant departure from Delin-

---

ing at a cafe and babysitting. This hardly seems worthy of condemnation. She was not using drugs, or engaging in prostitution or petty thiev-

ery to support licit or illicit needs. "It's not that the state considers [K.L.F.] a danger to herself or others in society...." Thus spoke the state.

quency Rule 12 and the emphasis articulated in *Doe*. I suggest that the court of appeals has rewritten both, and that it does not believe in the lip service it pays to either. I am unpersuaded that the petition was improvidently granted in this case.

## APPENDIX

### Transcript of Hearing Master Lucinda McBurney

THE COURT: All right. Well I'm more convinced today than I was the last time I had you in front of me that you need to be detained and I'll tell you why. Last time I had only done kind of a brief review of your file. I didn't go through it and read everything. I went through and read everything. There is not one thing in this file that indicates to me that you will stay anyplace that you're placed. There's not one indication of sincerity or interest in staying where you've been placed. You have four adjudicated violations of running away plus two that they didn't charge when you were at Booth. You don't have a good detention summary. You have a below average response to correction. I'm not impressed when you come in here and give me a story about what you've been doing while you were gone for three months. That's what you said the last time that you were gone. I think that you have never returned voluntarily from a runaway, you've always had to be arrested despite being urged by everybody in your family to turn yourself in and your counselors and your probation officers. You didn't do that. You're only here because you were arrested. I don't believe you would stay anywhere that I placed you now because I think you're only interested in being on your own. You think you make the rules, you think you want to be in charge. Frankly, you're not in charge. You like to think you're in charge but you're not and you've got to pay the price for that. The price is that you're not trusted. I don't trust you to stay anyplace. I've read through all these reports and one of the things you're really good at is manipulating people. And you may have con-

vinced some people that you have a real interest in turning things around but I don't see it. And if you expect to be released to any community setting, for instance, to your father, you better have a better detention summary than this because this is not going to get you out of anywhere. And I think that the very fact that you've caused us to come back here and have to go over your history once again indicates to me that you don't get the point. You don't get the point that there's not a reward for running away. We don't say, well, good for you, K., you were gone for three months so you get to stay out again. That's not the reward. If you want to be off probation, you want to be responsible for yourself, then you better start acting like it because all I see is a kid who is basically not interested in any authority, who is interested in making her own choices and running her own life and you have not displayed any maturity about that. You haven't indicated—there's nothing in your file that indicates to me that you're ready to do that. That you're ready to accept anybody's authority. I think if I released you to the shelter you'd be gone in a minute and you'd be back to doing whatever you were doing before. So I think that you are an appearance risk based not only on your history but the fact that the very reason you're here, you were adjudicated because you were gone for three months. You didn't turn yourself in, you had to be arrested every time. I think that nothing has changed and I think that if I were to release you before your disposition hearing you wouldn't be at your disposition hearing. I recommend you remain detained and pending your disposition hearing. If there's nothing further you can all be excused.

(Off record)